697 So.2d 158 (1997)
BANKERS RISK MANAGEMENT SERVICES, INC., a Florida Corporation, Appellant/Cross-Appellee,
v.
AV-MED MANAGED CARE, INC., a Florida Corporation, Appellee/Cross-Appellant.
No. 96-01895.
District Court of Appeal of Florida, Second District.
May 16, 1997.
Rehearing Denied July 15, 1997.
*159 Patricia Kelly of Harris, Barrett, Mann & Dew, St. Petersburg, for Appellant/Cross-Appellee.
Stephen C. Chumbris and Paul E. Parrish of Holland & Knight, St. Petersburg, for Appellee/Cross-Appellant.
PATTERSON, Acting Chief Judge.
Bankers Risk Management Services Inc. (Bankers) appeals from the final order which dismisses its multi-count complaint against Av-Med Managed Care, Inc. (Av-Med) for lack of subject matter jurisdiction and from the final summary judgment entered in favor of Av-Med as to counts IV (tortious interference with business relationships) and VI (fraud) of its complaint. We reverse the order of dismissal and the final summary judgment as to count IV and affirm the final summary judgment as to count VI.
Bankers is licensed by the State of Florida as a third-party administrator of self-insured employee health-benefit plans. As a thirdparty administrator, Bankers' services to its employer clients include plan design, assisting in enrollment, issuing identification cards to the employer groups, receiving and processing health insurance claims, and providing employee benefits booklets. Bankers also procures reinsurance for employees to protect them from claims over a specified dollar amount.
Av-Med is also a licensed third-party administrator and is a subsidiary of Av-Med Inc., a health maintenance organization (HMO). Among its functions, Av-Med provides administrator functions for other thirdparty administrators like Bankers. In these relationships, Av-Med offers its preferred provider organization (PPO) network to the employer groups while the third-party administrator supplies marketing and administrator services to the employer group. In 1990, Bankers and Av-Med entered into such a contractual relationship, executing a contract titled "Agreement for Administration of Marketing and Administrative Services" (the Marketing Agreement). The concept of the agreement was to bring together Av-Med's network of providers with Bankers' insurance marketing network and self-insured employer *160 clients, to the benefit of both companies. Pursuant to the Marketing Agreement, Av-Med was to provide numerous services to employer groups, which were Bankers' clients, under its own separate contract with the employer group. In regard to Bankers, Av-Med was to perform utilization review services, provide claims-paid information, and advise Bankers promptly of "high dollar claims." At one point, Bankers and Av-Med had thirty-five such joint clients.
The relationship between Bankers and Av-Med deteriorated, culminating in Bankers suing Av-Med in a six-count complaint. Counts I and II were for breach and wrongful termination of the Marketing Agreement. Count III was for negligence (as to this count, Av-Med prevailed on a motion for summary judgment, which Bankers did not appeal). Count IV asserts a claim for tortious interference with a business relationship. Count V alleges slander, and count VI alleges fraud.
Almost four years into this litigation, Av-Med filed a motion for summary judgment, which we will address separately in this opinion, and a motion to dismiss for lack of subject matter jurisdiction, asserting that all of Bankers' claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA).

THE MOTION TO DISMISS
ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C.A. § 1144(a) (West 1996). The issue of federal preemption is a question of subject matter jurisdiction. Hernandez v. Coopervision, Inc., 661 So.2d 33 (Fla. 2d DCA 1995). Therefore, the question is whether the cause of action set out in the complaint relates to a federally-protected employee benefit plan. There are numerous conflicts within the state and federal courts as to what does or does not "relate." As Justice Scalia observed:
Since ERISA was enacted in 1974, this Court has accepted certiorari in, and decided, no less than 14 cases to resolve conflicts in the Courts of Appeals regarding ERISA pre-emption of various sorts of state law. The rate of acceptance, moreover, has not diminished ... suggesting that our prior decisions have not succeeded in bringing clarity to the law.
California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., ___ U.S. ___,___ _ ___, 117 S.Ct. 832, 842-43, 136 L.Ed.2d 791, 805-06 (1997) (Scalia, J., concurring) (citations omitted).
Having found no cases which we consider to be controlling, we focus our attention on the specific facts of this case. When a state law claim does not affect relations among principal ERISA entities, it is not preempted by ERISA. ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan. Morstein v. National Ins. Servs., Inc., 93 F.3d 715 (11th Cir.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997). Bankers is not an ERISA entity. The dispute between Bankers and Av-Med is not related to the various employer plans they administer. The lawsuit does not affect the rights of beneficiaries of the plans, it does not affect the administration of the plans, nor does it impact the employers or the plans. It is merely a lawsuit between two business entities, whose business relationship happens to be the marketing and administration of health plans. Not being an ERISA entity, Bankers has no recourse to sue under ERISA. To hold that these traditional causes of action are preempted is to deny Bankers any remedy whatsoever. We determine that none of Bankers' claims are preempted and reverse the dismissal of the action.

THE MOTION FOR SUMMARY JUDGMENT
The trial court, without specifying the basis, granted summary judgment in favor of Av-Med on Bankers' claims for negligence (count III), tortious interference with a business relationship (count IV), and fraud (count VI). This order was entered prior to the order on the motion to dismiss.
As to count IV, Av-Med argued that it could not interfere in a contract to which it was a party. This argument is without merit. The only mutual contract to which Bankers *161 and Av-Med are parties is their Marketing Agreement. Count IV does not relate to the Marketing Agreement. Rather, it relates to Bankers' separate contractual relationships with the employer groups.
As to both counts IV and VI, Av-Med argued that recovery was barred by the economic loss rule. Since the time this case was argued in the trial court, our supreme court has clarified the economic loss rule in HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla.1996), in which the court stated:
The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract.
Tortious interference is such an independent tort. See Monco Enters., Inc. v. Ziebart Corp., 673 So.2d 491 (Fla. 1st DCA 1996). In count IV, Bankers alleges tortious interference by Av-Med both before and after the termination of their Marketing Agreement. Thus, it states an independent claim which is not barred by the economic loss rule.
Count VI asserts fraud in the performance of the Marketing Agreement. Some of the assertions are also the basis of Bankers' breach of contract count. Essentially, it accuses Av-Med of fraudulently representing that it was properly performing its duties under the Marketing Agreement. It is so intertwined with the performance of the contract that the assertions do not rise to the level of an independent tort. The economic loss rule therefore bars recovery as to this count.
We therefore reverse the summary judgment as to count IV and affirm as to count VI.

CROSS-APPEAL
Av-Med cross-appeals on two issues. The first relates to the trial court's refusal to limit Bankers' damages to the sixty-day termination provision of the Marketing Agreement. In support of its position, it cites several cases relating to the early termination of employment contracts. However, those cases are distinguishable. In employment contract cases the damages sought the lost wageswere earned under the contract and could only be earned as long as the contract was in force. Therefore, if an employment contract provides that it can be canceled on giving ninety days' written notice, it is logical to limit the damages to ninety days because the employee could at best earn ninety days of wages. In contrast, Bankers' profits were the product of its separate contracts with the employer groups, not its Marketing Agreement with Av-Med. Thus, the rationale for limiting the amount of damages for breach of the contract does not apply in this case, and the trial court was correct to so rule.
The second issue is the dismissal of Av-Med's counterclaim on the same ERISA preemption grounds as the dismissal of Bankers' complaint. Because of our reversal of Bankers' dismissal, we also reverse the dismissal of the counterclaim for the same reasons.
Affirmed in part, reversed in part, and remanded.
WHATLEY and QUINCE, JJ., concur.