**EXCESS RISK UNDERWRITERS, INC., a Florida corporation,**
Plaintiff,

v.

**LAFAYETTE LIFE INSURANCE COMPANY, an Indiana corporation; and Robert D. Dube, individually,** Defendants.

No. 01–4111–CIV.

United States District Court, S.D. Florida.

April 30, 2002.

Gary E. Davidson, George Wentz, Coral Gables, FL, for plaintiff.

Jeane Kneale, Mark Hicks, Cindy Ebenfeld, Miami, FL, for Robert Dube, defendant.

Richard C. Smith, Edward Moss, Nadine Gardner, Miami, FL, for Lafayette Life Ins., defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

GOLD, District Judge.

THIS CAUSE is before the court upon defendant Robert D. Dube's ("Dube") motion to dismiss (DE # 22) plaintiff Excess Risk Underwriters, Inc.'s ("ERU") first amended complaint as filed against him. ERU has filed an eleven count complaint against Dube and Lafayette Life Insurance Co. ("LLIC") alleging as follows: count I, breach of the ERU–LLIC agreement (against LLIC); count II, breach of confidentiality agreement (against LLIC); count III, breach of transfer policies agreement (against LLIC); count IV, promissory estoppel (against LLIC); count V, breach of fiduciary duty (against LLIC and Dube); count VI, fraudulent inducement (against Dube); count VII, fraudulent inducement (against LLIC); count VIII, tortious interference with a contractual business relationship (against LLIC and Dube); count IX, tortious interference with prospective business relationships (against LLIC and Dube); count X, conversion (against LLIC); and count XI, civil theft (against LLIC). The court has

subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that the parties are diverse and the amount in controversy is more than $75,000.00.

ERU claims monetary damages in an amount exceeding $35 million for LLIC's breach of contract and the defendants' tortious conduct. ERU claims that Dube induced it to enter into three related agreements with LLIC by misrepresenting LLIC's willingness to abide by the terms of the parties' contracts. Additionally, the complaint requests injunctive relief, as provided for by the parties' agreements, in order to prevent LLIC from taking threatened action that allegedly would result in irreparable harm to ERU.

### The Facts [1]

ERU is a Florida company engaged in the business of insurance administration. In 1997, ERU had a contractual right to the administration of certain blocks of business that previously had been underwritten by American Bankers' Life Assurance Company ("ABLAC"). These blocks of business were known as the ABLAC and Trust blocks. Under its agreement with ABLAC, ERU had the exclusive right to select a new carrier for the ABLAC and Trust blocks. (1st Am. Compl. at ¶ 12).

In 1997, ERU asked LLIC whether it was interested in becoming the replacement insurer for the ABLAC and Trust blocks of business, which represented approximately $17 million in annual premiums to LLIC. Pursuant to this inquiry, Dube, who is a senior vice president of LLIC, entered into extensive negotiations with ERU regarding the relationship to be established between LLIC and ERU. (1st Am. Compl. at ¶ 15). Based upon the representations made by Dube during this negotiations period, ERU entered into an agreement with LLIC, whereby LLIC would act as the replacement issuing insurer for the ABLAC block of business and for new business brought to LLIC by ERU. (1st Am. Compl. at ¶ 17; Ex. B). The ERU–LLIC agreement, which was drafted and signed by Dube as LLIC's authorized agent, obligated LLIC to use ERU exclusively for the administration of the business. The Trust block subsequently was added and made a part of the ERU–LLIC agreement. Although LLIC did not have the capacity to write the Trust block of business, Dube promised ERU that, in return for ERU providing LLIC with a complete package of information, forms, and resources to give LLIC the capacity to write the Trust block, LLIC would use ERU as its sole and exclusive administrator of the Trust block.

In December of 1997, ERU entered into a confidentiality and nondisclosure agreement with LLIC. Under this agreement, LLIC agreed to keep confidential all information disclosed to LLIC by ERU and not to use any information disclosed to LLIC by ERU to LLIC's advantage. (1st Am. Compl. at ¶ 19).

Based upon the ERU–LLIC and nondisclosure agreements, ERU began transferring to LLIC the ABLAC and Trust blocks of business. It also transferred to LLIC a complete package of information, forms, and resources in order to provide LLIC with the capability to write the Trust block of business. ERU claims that, rather than complying with its obligations

---

1. For purposes of this motion to dismiss, the court accepts the following facts as true, as gleaned from ERU's complaint.

and Dube's promises to forward the policies to ERU to administer, LLIC began administering the policies itself or diverting them to a third party. (1st Am. Compl. at ¶¶ 21, 25).

In November of 1998, prior to learning that LLIC had begun to divert the administration of policies away from ERU, ERU entered into another agreement with LLIC. Dube represented to ERU that LLIC would become the sole marketing arm for the ABLAC block, the Trust block, and a pool of hospital insurance policies administered by ERU. Dube promised that all policies produced by LLIC under the agreements in force would be sent to ERU for administration as called for in the agreements. Dube also represented that LLIC would generate at least sixty-five new policies per month for ERU to administer. These representations were incorporated into the Transfer Policies agreement. (1st Am.Compl.¶¶ 36–38). According to ERU, LLIC has failed to produce sixty-five transfer policies as promised in the agreement, and Dube and LLIC never intended to comply with their obligations.

On August 14, 2001, LLIC sent notification to ERU that, effective January 1, 2002, it was summarily terminating its relationship with ERU with the intention of recapturing the business that was being administered by ERU. (1st Am.Compl.Ex. E). The language of the termination notice indicates that LLIC expects to acquire all of the business brought to it by ERU despite the repeated promises by LLIC and Dube, and the terms of the various agreements, that the business brought to LLIC by ERU would remain with ERU and that ERU would remain the sole administrator of that business. (1st Am. Compl. at ¶ 42).

### Standard for Motion to Dismiss

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama,* 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Svcs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted); *Jackam v. Hospital Corp. of Am. Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion v. v. Reyes,* 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

### Analysis

Dube seeks to dismiss counts V, VI, VIII, and IX of ERU's complaint, as filed

against him, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dube's primary argument is that he cannot be held liable for breach of fiduciary duty, fraudulent inducement, or tortious interference because these claims are barred by the economic loss rule. That is, these counts do not allege torts independent of ERU's claims for breach of contract. For the reasons explained below, LLIC's motion to dismiss is granted.

## I. Dube May Assert Economic Loss Rule as Defense

■ At the outset, it is important to note that privity is not required in order for a party to raise the economic loss rule as a defense. ERU contends that the economic loss rule cannot apply to the claims it has brought against Dube because it has no contractual claims against Dube, and Dube was not a party to a contract with ERU. This argument is erroneous for two reasons. First, although it is true that only LLIC and ERU were parties to the various agreements involved in this case, Dube signed the agreements on behalf of LLIC as the corporation's senior vice president. As such, a contractual relationship exists between the parties. *See Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F.Supp. 1562, 1573 (S.D.Fla. 1993) (finding that contractual relationship existed between plaintiff corporation and individual defendants who signed contract on behalf of defendant corporation, but who were not parties to contract).

■ Second, under Florida law, it is irrelevant that ERU has not asserted any contractual claims against Dube.[2] This is because "a defendant need not be in privity of contract with a plaintiff in order for the tort claims against that defendant to be dismissed under the economic loss rule, assuming the plaintiff has a contractual remedy against another party." *Tai-Pan, Inc. v. Keith Marine, Inc.*, No. 95–338–Civ, 1997 WL 714898 *7 n. 12 (M.D.Fla. May 13, 1997) (citing *Am. Univ. Ins. Group v. Gen. Motors Corp.*, 578 So.2d 451, 454–55 (Fla.App. 1st DCA 1991)); *see also All Care Nursing Svc., Inc. v. High Tech Staffing Svcs., Inc.*, 135 F.3d 740, 745 n. 9 (11th Cir.1998) (stating that fact that plaintiff's corporation, but not plaintiff, was party to contract would not bar use of economic loss rule because privity is not required under Florida law); *Airport Rent–A–Car, Inc. v. Prevost Car, Inc.*, 660 So.2d 628, 630–31 (Fla.1995) (holding that economic loss rule applied to negligence claims although parties were not in privity with each other) (citing *Casa Clara Condo. Ass'n v. Toppino & Sons*, 620 So.2d 1244 (Fla.1993)). The application of the economic loss rule to this case stems from the principle that, "in the absence of privity of contract between two disputing parties, there is no 'duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things'." *Bay Garden Manor Condo. Ass'n, Inc. v. James D. Marks Assocs., Inc.*, 576 So.2d 744, 745 (Fla. 3d

2. As a federal court exercising diversity jurisdiction, this court must examine the law of the forum state to determine the parties' rights under the various applicable theories in this case. *See McMahan v. Toto*, 256 F.3d 1120, 1131 (11th Cir.2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)); *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir.1995). If the Florida supreme court has not issued a definitive answer on an issue, this court must adhere to the decisions of the state's intermediate appellate courts. *See Fioretti*, 53 F.3d at 1236 n. 28 (citations omitted).

DCA 1991) (citing Prosser & Keeton, *Law of Torts* § 92 at 657 (5th ed.1986)). In light of these decisions, Dube is not barred from raising the economic loss rule as a defense simply because ERU lacks a contractual claim against him.

## II. The Economic Loss Rule

■ In *Medalie v. FSC Securities Corp.*, 87 F.Supp.2d 1295 (S.D.Fla.2000), this court provided a general introduction to Florida's economic loss rule. As explained in that decision:

> Florida's economic loss rule was originally enunciated by the Supreme Court of Florida in the cases of *Florida Power & Light Co. v. Westinghouse Elec.*, 510 So.2d 899 (Fla.1987) and *AFM Corp. v. Southern Bell*, 515 So.2d 180 (Fla.1987). The doctrine provides that contract principles are more appropriate than tort principles for resolving economic loss claims without accompanying physical injury or injury to property other than that which is the subject of the contract. Consequently, a party to a contract may not pursue a claim in tort for solely economic losses unless the party breaching the contract has committed a tort which is distinguishable from or independent of the breach of contract. *Strickland–Collins Constr. v. Barnett Bank of Naples*, 545 So.2d 476 (Fla. 2d DCA 1989); *Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F.Supp. 1437, 1443 (S.D.Fla.1995).
>
> The economic loss rule is grounded on the basic difference between contract law—which protects expectations—and tort law—which is determined by the duty owed by all persons to others in society. *Casa Clara Condo. Ass'n v. Charley Toppino & Sons*, 620 So.2d 1244 (Fla.1993). Economic loss has been de-

fined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* Economic losses "are 'disappointed economic expectations', which are protected by contract, rather than tort law." *Casa Clara*, 620 So.2d at 1246 (quoting *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 236 Va. 419, 374 S.E.2d 55, 58 (1988)). For recovery in tort "there must be a showing of harm above and beyond disappointed expectations." *Id.* Consequently, when the alleged duty breached is derived from the contractual relationship it cannot form the basis for a separate and distinct tort. *Interstate Sec. Corp. v. Hayes Corp.*, 920 F.2d 769 (11th Cir.1991).

*Medalie*, 87 F.Supp.2d at 1299–1300.

### A. Breach of Fiduciary Duty

Count V of ERU's complaint is for breach of fiduciary duty. Dube contends that this count must be dismissed because it fails to allege a tort independent from the breaches of contract asserted throughout the rest of the complaint. In support of this argument, Dube relies on one of the more recent Florida Supreme Court decisions on the economic loss rule. In *Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999), the Florida supreme court reiterated the principle that, in order for a plaintiff to sustain a tort claim, the allegations establishing the tortious conduct must be independent from the allegations supporting a breach of contract. *Id.* at 981. Although the supreme court cautioned against the expansion of the application of the economic loss rule beyond its origins, it cited to its earlier decision in *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla.1996), as the "limit [of] the

application and reach of the economic loss rule". *Moransais,* 744 So.2d at 982–83. It favorably quoted the following language from *HTP:*

> The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract.

*Moransais,* 744 So.2d at 981 (quoting *HTP,* 685 So.2d at 1239); *see also Medalie v. FSC Sec. Corp.,* 87 F.Supp.2d 1295, 1303–05 (S.D.Fla.2000) (explaining *Moransais'* effect on economic loss rule and continued vitality of *AFM* ); *Allapattah Svcs., Inc. v. Exxon Corp.,* 61 F.Supp.2d 1326, 1332 n. 4 (S.D.Fla.1999) (explaining that, in *Moransais,* Florida supreme court reiterated its prior rulings barring tort claims based on a contractual relationship).

In light of the Florida supreme court's approval of the *HTP* rule, ERU's argument that the Florida supreme court came "just short of overturning" *HTP* in *Moransais* cannot stand. *See* ERU Opp. at 6. *Moransais* simply decided that actions for professional malpractice are not barred by the economic loss rule; it did not exempt all tort actions from the application of the rule. *See Moransais,* 744 So.2d at 983 ("We hesitate to speculate further on situations not actually before us."). No Florida supreme court decision after *Moransais* has purported to describe the application of the economic loss rule any differently.

■ Keeping in mind the principle that tort claims are barred when they are interwoven with the facts establishing a breach of contract, the court now turns to ERU's

breach of fiduciary duty claim. According to ERU's complaint, "By entering into the Confidentiality Agreement ..., ERU reposed a confidence in Dube and LLIC which Dube, acting as agent to LLIC, accepted on behalf of LLIC.... The Confidentiality Agreement thus created a confidential relationship ... that imposed a fiduciary duty upon Dube and LLIC." 1st Am. Compl. at ¶¶ 63, 64. ERU claims that the betrayal of this relationship gave rise to its breach of fiduciary duty claim against Dube.

In *Detwiler v. Bank of Central Florida,* 736 So.2d 757 (Fla. 5th DCA 1999), a Florida court analyzed similar allegations and held that the economic loss rule barred the plaintiff's breach of fiduciary duty claim. *Id.* at 759. According to the court:

> Under Florida law, a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties.... This is true because the duty is owed only as a result of the existence of the contract. Accordingly, the economic loss rule limits the plaintiff to pursuing her rights in contract.

*Id.* at 759 (citations omitted). *Detwiler's* holding is consistent with the *HTP* rule that the Florida supreme court cited with approval in *Moransais. See also McCutcheon v. Kidder, Peabody & Co., Inc.,* 938 F.Supp. 820, 824 (S.D.Fla.1996) (holding that economic loss rule barred claim for breach of fiduciary duty where plaintiff's claim arose "solely as a result of the existence of a contract between the parties"); *Clayton v. State Farm Mut. Auto. Ins. Co.,* 729 So.2d 1012, 1014 (Fla. 3d DCA 1999) (holding that economic loss rule barred claim for breach of fiduciary duty where precontract misrepresentations

were directly related to alleged breach of contract).

Under these cases, ERU's breach of fiduciary duty claim against Dube is barred by the economic loss rule because ERU has not alleged facts independent from the contract. The complaint clearly states that the fiduciary duty and confidential relationship were created "[b]y entering into the Confidentiality Agreement". Compl. at ¶¶ 63, 64. Because ERU's claim for breach of fiduciary duty arose solely as a result of the existence of this contract, the claim is barred. *See Moransais,* 744 So.2d at 981.

ERU attempts to avoid the application of the economic loss rule in two ways. First, ERU contends that the fiduciary duty claim is independent of the parties' agreements. This argument belies the allegations of ERU's complaint that are discussed in the preceding paragraph. Rather than attempting to address the allegations contained in paragraphs sixty-three and sixty-four of the complaint, ERU argues that paragraphs fifteen through thirty-seven allege a number of specific actions taken by Dube independently of the contractual relationship. The court has reviewed these allegations and has determined that ERU's argument is without merit. Each of the allegations relied on by ERU are related to the parties' performance under the agreements or the formation of the contracts. For example, paragraph thirty-six alleges that Dube promised that LLIC would produce a minimum of sixty-five new policies per month. This representation also is contained in the Transfer Policies agreement entered into between LLIC and ERU. Paragraph seventeen states, "Based upon the representations of Dube [made during the negotiations process]... LLIC entered into an agreement with ERU...." This statement directly relates to the ERU–LLIC agreement. As such, these paragraphs do not state allegations independent of the parties' contracts.

ERU's second argument is that Florida case law subsequent to *Moransais* categorically holds that claims for breach of fiduciary duty are not barred by the economic loss rule, even when the duty arises from an underlying contract. The problem with this argument is that it directly contravenes the Florida supreme court's reasoning in *Moransais,* wherein the court described the limitation of the economic loss rule as allowing tort actions where the "intentional or negligent acts [are] considered to be independent from the acts that breached the contract." *Moransais,* 744 So.2d at 981 (citing *HTP,* 685 So.2d at 1239). This language, which has not been revisited by any other Florida supreme court decision, undermines ERU's position that a tort claim lies when the fiduciary duties arise from a contract.

*First Equity Corp. of Florida, Inc. v. Watkins,* No. 98–851, 1999 WL 542639 (Fla. 3d DCA Jul.28, 1999), which is relied upon by ERU, does not compel a different result. In *Medalie,* this court explained that *First Equity* contains no analysis in reaching its conclusion that an investor's breach of fiduciary duty claim was not barred by the economic loss rule, and the case is in conflict with another post-*Moransais* case, *Monroe v. Sarasota County School Board,* 746 So.2d 530, 538 (Fla. 2d DCA 1999), which advocates a narrower approach to the economic loss rule. *See Medalie,* 87 F.Supp.2d at 1303–04. *Invo Florida, Inc. v. Somerset Venturer, Inc.,* 751 So.2d 1263 (Fla. 3d DCA 2000), which also is cited by the plaintiff, does not afford ERU any relief because that case

arose in the securities context and involved the well-established tort of breach of fiduciary duty against directors of dissolved corporations. In contrast, the instant case involves neither securities matters nor a shareholder's claim against a director. Additionally, the acts that constituted the breach of fiduciary duty in *Invo* were separate and distinct from the breach of contract.

Absent controlling authority, this court will not follow the broad dicta of cases like *First Equity* and *Invo*. Rather, it will adhere to the Florida supreme court's most recent pronouncement of the economic loss rule, which bars tort claims that are based on actions inextricably intertwined with the acts constituting the breach of contract.[3] Under this rule, ERU's claim for breach of fiduciary duty is barred because ERU's complaint specifically states that Dube's fiduciary duties arose from the agreements at issue in this case. Accordingly, count V of ERU's complaint is dismissed as filed against Dube.

## B. Fraudulent Inducement

■ Count VI of ERU's complaint asserts a claim for fraudulent inducement against Dube. This count must be dismissed for the same reason as count V—it fails to state a claim independent from the acts and omissions that constitute the breach of contract. In *HTP*, the Florida supreme court recognized that fraudulent inducement can be an independent tort not barred by the economic loss rule. *Id.*, 685 So.2d at 1240. The court noted that:

[f]raud in the inducement presents a special situation where parties to a contract appear to negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior. . . . The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract. With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action.

*Id.* (citing *Huron Tool & Eng'g Co. v. Precision Consulting Svcs.*, 209 Mich.App. 365, 532 N.W.2d 541, 545 (1995)). Subsequent to *HTP*, the Florida supreme court, in *Hotels of Key Largo v. RHI Hotels, Inc.*, 694 So.2d 74, 77 (Fla.App.1997), added that one cannot avoid the economic loss rule by merely labeling a claim as fraud. The fraud must be separate and distinct from the breaching party's performance of the contract. *Id.* at 77; *see also Time Int'l, S.A. v. Safilo U.S.A., Inc.*, 802 So.2d 382, 383–84 n. 1 (stating that claim for fraud in the inducement is not barred by economic loss rule as a matter of law, but, if the claim is not independent of contract, economic loss rule will apply).

In this case, ERU's fraudulent inducement claim is insufficient to survive the

---

**3.** As noted above, as a court sitting in diversity, the district court must follow the decisions of the state's highest court. *See Brown v. Nichols*, 8 F.3d 770, 773 (11th Cir.1993). It is not bound by the intermediate appellate decisions of *First Equity* and *Invo* because the supreme court's description of the economic loss rule in *Moransais* is a "persuasive indication that the state's highest court would decide the [issues decided in *First Equity* and *Invo* ] otherwise". *Insurance Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir.1991) (citations omitted).

economic loss rule because it is essentially a breach of contract or fraud in the performance claim that has been labeled as "fraudulent inducement". That is, looking beyond the label of the claim, ERU has not pled a claim for fraud that is separate and distinct from the alleged breach of contract. The allegations that relate to the fraudulent inducement claim against Dube state, "Dube induced ERU to enter into the ERU–LLIC Agreement. . . . Dube further induced ERU to enter into the Confidentiality Agreement. . . Dube never intended to abide by the terms of the Confidentiality Agreement." 1st Am. Compl. at ¶¶ 68–72. In essence, ERU claims that Dube made misrepresentations to ERU that later were incorporated into the parties' agreements and that Dube never intended to follow through with these agreements. These allegations also constitute the heart of the breach of contract claims. Moreover, the contracts at issue in this case contain merger clauses that supersede all prior representations and agreements. *See Bates v. Rosique*, 777 So.2d 980, 982 (Fla. 3d DCA 2001) (approving trial court's reliance on merger clause for application of economic loss rule to claim for fraudulent inducement). Because the statements allegedly made by Dube to induce ERU to enter into the contracts also were embodied in the contracts, the claim for fraudulent inducement is barred by the economic loss rule. *See Premix–Marbletite Mfg. Corp. v. SKW Chem., Inc.*, 145 F.Supp.2d 1348 (S.D.Fla. 2001) (barring fraudulent inducement claim under economic loss rule where defendant's misrepresentations constituting fraud also went "directly to the heart of the parties' contractual relationship"); *Amoco Oil Co. v. Gomez*, 125 F.Supp.2d 492, 507 n. 14 (S.D.Fla.2000) (noting that economic loss rule would bar fraudulent

inducement claim because the alleged fraud was the same as performance due under contracts); *Bates*, 777 So.2d at 982–83 (holding that fraudulent inducement claim was barred where defendant's representations were later incorporated into contract itself); *compare MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F.Supp.2d 1346, 1362 (S.D.Fla.2000) (holding that fraudulent inducement claim survived economic loss rule because misrepresentations relating to fraud were not part of contract); *Medalie v. FSC Sec. Corp.*, 87 F.Supp.2d 1295, 1305–06 (S.D.Fla.2000) (same). As such, count VI must be dismissed.

### C. Tortious Interference

■ Counts VIII and IX of ERU's complaint are for tortious interference with a contractual and prospective business relationship, respectively. These claims are identical to the allegations that constitute the breach of contract claims. According to the complaint, Dube and LLIC tortiously interfered with ERU's "contractual relationships with respect to its administration of the ABLAC block, Trust block and Hospital Pool Business" by diverting the administration of these blocks to LLIC. 1st Am. Compl. at ¶¶ 94, 96. Dube and LLIC also allegedly induced ERU to curtail ERU Producers, which then allowed LLIC to interfere with the beneficial relationships that would have been developed by ERU. 1st Am. Compl. at ¶ 102. These allegations are similar to those that fall under the breach of contract claims—that LLIC failed to use ERU as the sole administrator of the ABLAC, Trust, and Hospital Pool blocks of business and that ERU curtailed its Producers in reliance on LLIC's unfulfilled promises. 1st Am. Compl. at ¶¶ 45, 54, 55. Under both the contract and tort-based causes of action,

ERU is attempting to obtain damages for Dube's and LLIC's attempt to acquire the business of third parties. Because the factual allegations and damages sought under these claims are identical, counts VIII and IX are barred by the economic loss rule. *See Eclipse Med., Inc. v. Am. Hydro–Surgical Instr., Inc.*, No. 96–8532–Civ, 1999 WL 181412 *14–15 (S.D.Fla. Jan.20, 1999) (holding that claim for tortious interference was barred because damages claimed under this tort and facts necessary to prove it were identical to those needed to establish breach of contract); *compare Bankers Risk Mgmt. Svcs., Inc. v. Av–Med Managed Care, Inc.*, 697 So.2d 158, 161 (2d DCA 1997) (holding that claim for tortious interference was independent of contract claim because allegations related to conduct both before and after termination of agreement).[4] As such, these counts must be dismissed as filed against Dube.

Accordingly, it is hereby:

ORDERED AND ADJUDGED THAT:

1. Dube's motion to dismiss (DE # 22) is GRANTED.

2. Counts V, VI, VIII, and IX of ERU's complaint are dismissed as filed against Dube.

---

4. ERU's reliance on *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F.Supp. 1538 (S.D.Fla. 1996), where the court held that the plaintiff's claim for tortious interference was not barred by the economic loss rule, is not persuasive. As observed by this court in a post-*Future Tech* decision, "*Future Tech* was decided before the Florida Supreme Court issued its opinion in *HTP*", where the Florida supreme court made clear that the economic loss rule would apply if the facts necessary to prove the tort and contract claims are interwoven. *See Eclipse Med.*, 1999 WL 181412 at *14. Because *Future Tech* did not apply the rule that governs the consideration of the issue before the court, it is inapplicable to this case.