**Andrew E. WYDLER, and Susan Wydler, Plaintiffs,**

v.

**BANK OF AMERICA, N.A., Defendant.**

**Nos. 03–21293–CIV–GOLD, 03–21293–CIV–SIMONTON.**

United States District Court, S.D. Florida.

March 15, 2005.

---

5. The Court does not, at this time, pass on the issue of whether Plaintiffs would be entitled to reimbursement.

Jack Louis Herskowitz, The Herskowitz Law Firm, Robert Cary Maland, Miami, FL, for Plaintiffs.

Scott Daniel Ponce, Holland & Knight, Miami, FL, Mitchel H. Kider, Cynthia G. Swann, Weiner Brodsky Sidman Kider, Washington, DC, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CLOSING CASE

GOLD, District Judge.

THIS CAUSE is before the Court upon Defendant Bank of America's Motion to Dismiss Plaintiffs' First Amended Complaint [**DE 41**], filed August 25, 2004. Plaintiffs filed their opposition to Defendant's Motion [**DE 46**] on October 25, 2004. Defendant filed its reply [**DE 49**] on November 18, 2004. The parties filed supplemental briefs on February 4, 2005 and February 8, 2005 [**DE 50, 51**].

Plaintiffs' Complaint was previously dismissed after the Court granted Defendant's Motion to Dismiss. [**DE 33**].

Plaintiffs were given leave to amend, and filed their First Amended Complaint **[DE 36]** on June 21, 2004.

After reviewing the First Amended Complaint, the parties' arguments, and the relevant statutes and case law, the Court concludes that Defendant's motion should be granted and the First Amended Complaint should be dismissed with prejudice.

## Standard of Review

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama,* 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hoffend v. Villa,* 261 F.3d 1148, 1150 (11th Cir.2001) (citation omitted), *cert. denied,* 535 U.S. 1112, 122 S.Ct. 2328, 153 L.Ed.2d 159 (2002). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *Beck v. Deloitte & Touche,* 144 F.3d 732, 736 (11th Cir.1998) (citation omitted), *reh'g denied,* 189 F.3d 487 (11th Cir.1999). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.,* 208 F.Supp.2d 1310, 1313 (S.D.Fla.2002). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Id. (citing Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993)).

## Analysis

Plaintiffs allege a single count in their First Amended Complaint, for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(b) ("RESPA" or "Section 8(b)"). This section states in full:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan *other than for services actually performed.*

*Id.* (emphasis added).

Plaintiffs allege that Bank of America overcharged Plaintiffs and others in the purported class by accepting an escrow waiver fee in the amount of $500.00. The Wydlers allege that their mortgage lender, Defendant Bank of America, charged them (and others in the purported class) an escrow waiver fee at loan closing in violation of Section 8(b) of the RESPA. They allege that this fee violates Section 8(b) because it was imposed "to *not* perform the escrow services that would have arisen with regard to the monthly payment of taxes and insurance by Plaintiffs." (Complaint ¶ 9). The Complaint alleges that the escrow waiver fee violates Section 8(b) because: (1) services in connection with the fee are provided not by Bank of America, N.A. but by a separate legal entity, Bank of America Mortgage Corp., even though the fee was accepted by Bank of America, N.A.; (2) Plaintiffs were charged a one-time $70.00 fee for Transamerica Real Estate Tax Service to monitor the payment of real estate taxes for the life of the mortgage loan, thus the $500 escrow waiver fee is duplicative to the extent it is paid to monitor the payment of real estate taxes; and (3) the mortgage provides that

the waiver may be unilaterally revoked by the lender at any time, and is thus illusory.

In its motion to dismiss, Bank of America argues that the Wydlers' complaint should be dismissed because the escrow waiver fee exists to compensate Bank of America for monitoring the monthly payment of taxes and insurance by the Wydlers, and is therefore a reasonable charge for services actually rendered. Defendant also argues that the escrow waiver fee is a charge for the servicing of the loan, not a charge for the rendering of a "real estate settlement service"—a threshold for stating a claim under § 8(b). Defendant also argues that plaintiffs' claim is barred by the voluntary payment doctrine because the waiver fee was knowingly contracted for and paid by plaintiffs without objection. Finally, the Bank also argues that it never split nor attempted to split any portion of the waiver fee with a third party, which the Bank argues is a requirement for a § 8(b) claim. While some of these arguments seem like they might be considered affirmative defenses, in particular the voluntary payment doctrine, I review the Complaint solely to determine whether it states a claim upon which relief may be granted.

## I. *Liability Under the RESPA*

The Plaintiffs complain of three practices. First, the Plaintiffs complain that Bank of America N.A. collected the escrow waiver fee even though Bank of America Mortgage Corp. provided the services in connection with the fee. Second, the Plaintiffs complain that the $500 escrow waiver fee is duplicative to the extent it is paid to monitor the payment of real estate taxes since the Bank paid a third party a one-time fee of $70.00 to monitor the payment of taxes, and is excessive to the extent it constitutes payment to monitor the annual payment of insurance. Third, the Plaintiffs complain that the mortgage provides that the waiver may be unilateral-

ly revoked by the lender at any time, and is thus illusory, I shall now analyze the language of the statute to decide whether the statute clearly and unambiguously prohibits any of these three practices.

### A. *Sharing the Fee with a Lender's Own Servicing Arm*

Plaintiffs suggest that § 8(b) prevents Bank of America from having its servicing arm service the loan it provided to the Plaintiffs. Plaintiffs argue that because Bank of America Mortgage Corporation is a separate legal entity from Bank of America, N.A., Bank of America, N.A. may be held liable for charging the Plaintiffs for services that were performed by Bank of America Mortgage Corporation.

Section 8(b) clearly does not intend for lenders to be liable for employing their servicing arms to service loans. The Eleventh Circuit has described the Congress's intent in passing this section of the RESPA:

Congress passed RESPA in order to reduce the costs consumers pay to settle their real estate transactions. The statute states:

(a) The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601.

One of the abusive practices that Congress sought to eliminate through the enactment of RESPA was the payment of referral fees, kickbacks, and other unearned fees. S.Rep. No. 93–866 (1974), reprinted in 1974 U.S.C.C.A.N.

6546, 6551. Of particular interest to Congress was the payment by settlement service providers of commissions or fees in exchange for the referral of a consumer's business. *Id.* Congress similarly wished to eliminate fees for which no service was performed and no goods were furnished. *Id.* These fees are passed along to consumers and increase settlement costs without providing any benefits.

*Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 981 (11th Cir.2003).

■ It is not a plausible interpretation of § 8(b) that Bank of America, N.A. should be liable for utilizing Bank of America Mortgage Corporation to service loans because the relationship between the two entities is not one in which business is "referred" from one entity to the next. As far as the Plaintiffs are concerned, Bank of America N.A. and Bank of America Mortgage Corporation are the same entity. Indeed, the mortgage documents attached to Plaintiffs' Complaint reveal that the Plaintiffs were to make monthly payments to "Bank of America Mortgage, P.O. Box 17404, Baltimore, MD 21297–1404." (Adjustable Rate Note, Exhibit "B" to Complaint). Thus even the Complaint facially alleges that Bank of America, N.A. is a separate legal entity from Bank of America Mortgage Corporation, the documents attached thereto reveal that the companies were interchangeable for purposes of their transaction with the Plaintiffs.[1] Accordingly, the first practice of which Plaintiffs complain does not give rise to a cause of action under § 8(b).

**B.  *Excessive Fee***

■ Plaintiffs also complain that the $500 escrow waiver fee is duplicative and excessive. They argue that it is duplicative to the extent it is paid to monitor the payment of real estate taxes since the Bank paid a third party a one-time fee of $70.00 to monitor the payment of taxes. They argue that it is excessive to the extent it constitutes payment to monitor the annual payment of hazard insurance.

In *Sosa*, the Eleventh Circuit squarely addressed the first part of Plaintiffs' complaint. The complaint in *Sosa* alleged that the lender charged borrowers $50 for courier or messenger fees, that the lender paid only a portion of that fee to third-party contractors, and that the lender created the misimpression that the fees were entirely paid to the third parties. 348 F.3d at 983. The Court dismissed the Complaint because it failed to allege that the

---

1. It is well-settled that when considering a motion to dismiss, a court may consider not only the pleadings, but also the exhibits attached thereto. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). A court may consider documents attached to the complaint or directly referred to in the complaint, and doing so will not convert the motion to one for summary judgment. *See Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir.1997), citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993) (citations omitted); *Solis–Ramirez v. United States Dept. of Justice*, 758 F.2d 1426, 1430 (11th Cir.1985); *see also Fecht v. The Price Co.*, 70 F.3d 1078, 1080 n. 1 (9th Cir.1995) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(8) motion to dismiss.") (internal quotation omitted). Furthermore, where there is a conflict between allegations in a pleading and exhibits thereto, the exhibits control. *See Tucker v. National Linen Service Corp.*, 200 F.2d 858, 864 (5th Cir.1953); *Simmons v. Peavy–Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir.1940), cert. denied, 311 U.S. 685, 61 S.Ct. 63, 85 L.Ed. 442 (1940); *see also Bell v. Lane*, 657 F.Supp. 815, 817 (N.D.Ill.1987) ("Where exhibits attached to a complaint negate its allegations, a court is not required to credit the unsupported allegations").

lender performed *no* services in connection with the fee. In fact, in *Sosa*, the Eleventh Circuit found it a sufficient service that the lender retained the services of a third party: "[E]ven if [the lender] could not be credited with the actual delivery, [the lender] benefited the borrowers by arranging for third party contractors to perform the deliveries. Under these circumstances, we find it impossible to say that [the lender] performed no services for which its retention of a portion of the fees at issue was justified."

In this case, not only did the Bank retain the services of Transamerica Real Estate Tax Service to monitor the payment of real estate taxes, but the Bank itself monitored the payment of hazard insurance. Because the complaint does not allege a charge for no services, it does not state a claim for a "duplicative" charge as argued by the Plaintiffs.

The Plaintiffs also argue that the charge is excessive to the extent that only $75.00 was charged for monitoring taxes while the remaining $425.00 was charged for the Bank to monitor the payment of hazard insurance. The Plaintiffs do not allege in the Complaint that the Bank did not intend to monitor the payment of hazard insurance, and Plaintiffs in fact concede that the charge was at least in part for monitoring the payment of hazard insurance. Thus, Plaintiffs complain that the Bank *overcharged* them for monitoring the payment of hazard insurance.

In *Friedman v. Market Street Mortgage Corporation,* 107 Fed.Appx. 888, 2004 WL 1236976 (11th Cir.2004), the Eleventh Circuit decided in an unpublished decision that class actions plaintiffs could amend their complaint to allege that they were charged an excessive fee by their mortgage lender; the Court did not decide whether an excessive fee violates § 8(b). *Id.* at —— – —— ("We decline to decide whether ... an excessive fee violates

§ 8(b) ... because that issue is not yet presented in the instant complaint, and because a decision on that issue may well be unnecessary in this case because it may well be revealed by further developments on remand that the fee at issue is amply explained by the services contemplated or earned in other ways."). The Eleventh Circuit's decision in *Friedman* is unavailing here since the Wydlers' complaint does allege that the fee charged by the Bank was excessive and thus raises the issue that was not before the Court in *Friedman*. Accordingly, I must determine whether the Wydlers' complaint states a cause of action under § 8(b).

The Eleventh Circuit has not squarely addressed the question presented, i.e., whether an excessive fee violates § 8(b). In a related case, *Sosa v. Chase Manhattan Mortg. Corp.,* 348 F.3d 979 (11th Cir. 2003), the Court analyzed § 8(b) of the RESPA and dismissed a complaint which alleged that a mortgage lender retained a portion of a fee charged for services conducted by a courier because it lacked "an allegation that the portion of the charge that [the lender] retained was accepted 'other than for services actually performed,' i.e., that [the lender] performed no services that would justify its retention of a portion of the fee." *Id.* at Because the complaint in *Sosa* did not allege that the lender performed some services and charged an unreasonable fee for those services, that case is distinguishable. Accordingly, I approach this as a case of first impression. In determining whether an excessive fee violates § 8(b), I must first view the language of the statute to decide whether the statute clearly and unambiguously prohibits the practices of which the Plaintiffs complain. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency,

must give effect to the unambiguously expressed intent of Congress."); *accord Household Credit Servs., Inc. v. Pfennig,* 541 U.S. 232, 124 S.Ct. 1741, 158 L.Ed.2d 450 (2004) (quoting *Chevron* ).

■ I concur with the conclusion reached by the Second, Fourth, Seventh, and Ninth Circuit Courts of Appeals that overcharges are not unlawful under § 8(b). *Kruse v. Wells Fargo Home Mortgage, Inc.,* 383 F.3d 49 (2d Cir.2004); *Krzalic v. Republic Title Co.,* 314 F.3d 875 (7th Cir. 2002), *cert. denied,* 539 U.S. 958, 123 S.Ct. 2641, 156 L.Ed.2d 656 (2003); *Haug v. Bank of Am.,* 317 F.3d 832 (9th Cir.2003); *Boulware v. Crossland Mortgage Corp.,* 291 F.3d 261 (4th Cir.2002) The Second Circuit held in *Kruse* that "nothing in [the language of § 8(b) ] authorizes courts to divide a 'charge' into what they or some other person or entity deems to be its 'reasonable' and 'unreasonable' components. Whatever its size, such a fee is 'for' the services rendered by the institution and received by the borrower." 383 F.3d at 56. The explanation provided by the Second Circuit is sensible: "It would, moreover, be an odd reading of the statute to conclude that it instructs federal courts to award treble damages, *see* RESPA

§ 8(d)(2), for 'unreasonable' charges made by financial institutions without giving those courts so much as a hint as to how to differentiate between what is and is not 'reasonable.' There is nothing in the language of section 8(b) to suggest that Congress meant for us to create such a regulatory regime out of whole cloth." [2] *Id.* Furthermore, as the Second Circuit explained, the legislative history of the RESPA supports this interpretation of the statute. *Id.* at 56–57 (explaining that Congress considered and rejected an explicit price-control measure prior to passage of the RESPA, and that Congress ordered HUD to produce a report on whether such legislation was advisable). RESPA is not a price-control statute, and I shall not read it as such. *Accord Krzalic v. Republic Title Co.,* 314 F.3d 875, 881 (7th Cir. 2002), *cert. denied,* 539 U.S. 958, 123 S.Ct. 2641, 156 L.Ed.2d 656 (2003) ("[RESPA] is not a price-control statute."); *Haug v. Bank of Am.,* 317 F.3d 832, 836 (8th Cir. 2003) ("[A]n overcharge, standing alone, does not violate Section 8(b) of RESPA."); *Boulware v. Crossland Mortgage Corp.,* 291 F.3d 261, 268 (4th Cir.2002) ("RESPA was meant to address certain practices, not enact broad price controls.").[3] I

---

**2.** Indeed, at oral argument regarding the Bank's first motion to dismiss in this case, I noted in a colloquy with counsel regarding the fee in this case that a $500 fee amortized over the thirty year life of the loan seemed "pretty reasonable" to me. (Oral Argument Transcript of February 20, 2004 Hearing at 7). Even if § 8(b) did give rise to a cause of action for unreasonable or excessive charges, I have already stated my conclusion that this charge is facially reasonable, considering the life of the loan. The fact that my conclusion is based on a formula of my own making— namely, consideration of the type of charge, the amount of charge, the services rendered, and the life of the loan—does not negate the fact that the statute itself provides no hint at a formula to be adopted by courts in considering whether an excessive charge is actionable.

**3.** Though not integral to their decisions regarding liability for overcharges under the RESPA, these circuit courts have also concluded that a single actor may not violate the RESPA on its own. I acknowledge that the Eleventh Circuit disagrees on that point. In *Sosa,* the Eleventh Circuit held that a single actor may violate the RESPA. 348 F.3d at 982–83. The Eleventh Circuit held that there need not exist both a culpable giver of an unearned fee and culpable acceptor of an unearned fee for there to exist liability under § 8(b). Thus a single lender could theoretically be held liable under § 8(b) if one real estate settlement service provider decides to give a kickback to another and the second provider, aware of RESPA's prohibitions, refuses to accept the kickback. *Id.* at 983. While the Eleventh Circuit disagrees with these circuits regarding one aspect of

therefore hold that the question unaddressed by the Eleventh Circuit in *Friedman*—i.e., whether an excessive fee violates RESPA—should be answered in the negative.[4] Like these Circuits, I also conclude that I need not consider a HUD Policy Statement concluding that "unreasonably" high charges for real estate settlement services violate the RESPA. Such a report need only be considered when the text of a statute is unclear and ambiguous, which is not the case here. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. Finally, because I conclude that Plaintiffs' Complaint facially does not state a claim for violation of the RESPA, Plaintiffs are not entitled to discovery in order to develop a record regarding the unreasonability of the waiver fee.

### C. *Potential for Revocation of the Waiver*

■ The final practice complained of by Plaintiffs is an alleged provision in the mortgage providing that the waiver may be revoked if the loan is purchased by or otherwise transferred to another lender; Plaintiffs argue that this renders the charge illusory. Upon a review of the documents appended the Complaint, I disagree. The Waiver Agreement, which is appended as an exhibit to the Complaint, states that the waiver extends to "anyone who buys the loan from [the Bank]." Thus, the documents appended to the Complaint contradict Plaintiffs' assertion that if the loan is purchased by another lender, that lender may modify the waiver. It is clear from these documents that the mortgage will be serviced for the remainder of its life as a non-escrowed loan, ensuring that any new servicer must conduct itself in accordance with the terms of the mortgage and the integrated Waiver Agreement. As explained in *supra* note 1, if the documents appended to a complaint conflict with the allegations, the documents control. As such, Plaintiffs have not slated a claim under § 8(b) of the RESPA.

### II. *Conclusion*

Because I conclude that Plaintiffs have not stated a claim under RESPA, I need not address Defendant's remaining arguments regarding the voluntary payment doctrine and the difference between a "servicing" charge and a "settlement" charge. In addition, because Plaintiffs have already been given leave to amend the Complaint once and have not requested leave to amend once more (and because any amendment would be futile), the Complaint shall be dismissed with prejudice.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

§ 8(b)—i.e., whether a single actor may violate RESPA—I conclude that the disagreement would not prevent the Eleventh Circuit from concluding that overcharges are not violations of the RESPA. That the culpable acceptor may be liable despite the absence of a culpable acceptor does not mean, as Plaintiffs suggest, that *every* instance in which a single lender accepts a charge gives rise to an action under § 8(b). I find persuasive only those portions of the opinions of the Second, Fourth, Seventh, and Ninth Circuits which read the statutory language of § 8(b) as clearly and unambiguously *not* prohibiting overcharges or "unreasonable" or "excessive" fees.

4. When *Friedman* returned to Judge King upon remand, Judge King denied the Defendant's motion to dismiss, noting that the Plaintiffs had amended their Complaint pursuant to the Eleventh Circuit's decision. However, Judge King failed to address or analyze in any way whether an excessive fee violates § 8(b) of the RESPA, even though that issue was not decided by the Eleventh Circuit. To the extent that Judge King's decision is interpreted as deciding that RESPA prohibits excessive fees by lenders, I respectfully note disagreement with that conclusion.

1. Defendant's Motion to Dismiss [**DE 41**] is GRANTED.
2. Plaintiffs' Amended Complaint is DISMISSED WITH PREJUDICE.
3. All pending motions are DENIED AS MOOT.
4. This case is CLOSED.

### *ENTRY OF FINAL JUDGMENT; DISMISSING AND CLOSING CASE*

On March 16, 2005, the Court entered an Order Granting Defendants' Motion to Dismiss and dismissing Plaintiffs' Amended Complaint with prejudice. The Court having entered final judgment in favor of Defendants, it is hereby:

**ORDERED AND ADJUDGED**: That Plaintiffs take nothing and that the action be dismissed. The Court reserves consideration of costs and attorneys fees.