The **COMPETITIVE TELECOMMUNICATIONS ASSOCIATION, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, U.S. Sprint Communications Company, Ad Hoc Telecommunications Users Committee, MCI Telecommunications Corporation, Southwestern Bell Telephone Company, US West Communications, Inc., and Custom Network Services Users Group, Intervenors.**

**No. 92–1013, et al.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 9, 1993.

Decided Aug. 6, 1993.

Robert J. Aamoth, with whom Genevieve Morelli, Washington, DC, Joseph W. Miller, Tulsa, OK, William L. Fishman, Eric Fishman, H. Richard Juhnke, Michael B. Fingerhut, Washington, DC, Chester T. Kamin, Chicago, IL, Michael H. Salsbury, Anthony C. Epstein, Donald J. Elardo, and Frank W. Krogh, Washington, DC, were on the joint brief, for petitioners. Leon M. Kestenbaum, Washington, DC, also entered an appearance for petitioners.

John E. Ingle, Deputy Associate Gen. Counsel, FCC, with whom Charles A. James, Acting Asst. Atty. Gen., Renee Licht, Acting Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, Laurel R. Bergold, and Lawrence N. Bourne, Counsel, FCC, and Catherine G. O'Sullivan and Robert J. Wiggers, Attys., Dept. of Justice, Washington, DC, were on the brief, for respondents.

James S. Blaszak, Patrick J. Whittle, Henry D. Levine, and Ellen G. Block, Washington, DC, were on the brief, for intervenors Ad Hoc Telecommunications Users Committee and Custom Network Services Users Group.

Francine J. Berry, John J. Langhauser, Basking Ridge, NJ, David W. Carpenter, and Peter D. Keisler, Washington, DC, were on the brief, for intervenors American Telegraph Co.

Robert B. McKenna, Denver, CO, James E. Taylor, Richard C. Hartgrove, and Thomas A. Pajda, St. Louis, MO, were on the brief, for intervenors US West Communications, Inc., and Southwestern Bell Tel. Co.

Leo J. Bub, San Antonio, TX, also entered an appearance, for intervenors.

Leon M. Kestenbaum, H. Richard Juhnke, and Michael B. Fingerhut, Washington, DC, entered appearances for intervenor U.S. Sprint Communications Co.

Chester T. Kamin, Chicago, IL, Michael H. Salsbury, Anthony C. Epstein, Frank W. Krogh, and Donald J. Elardo, Washington, DC, entered appearances, for intervenor MCI Telecommunications Corp.

Before SILBERMAN, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The Competitive Telecommunications Association, MCI Telecommunications Corporation, Sprint Communications Company, and Williams Telecommunications Company petition for review of an FCC decision, entered upon remand from this court, holding that four integrated service packages offered by AT & T under its "Tariff 12" are not unreasonably discriminatory. *See AT & T Communications, Revisions to Tariff F.C.C. No. 12*, 6 FCCRcd 7039 (1991); § 202(a) of the Communications Act of 1934, 47 U.S.C. § 202(a). Because there is substantial evidence in the record supporting the FCC's decision, we deny the petitions for review.

## I. BACKGROUND

At issue is the lawfulness of four of AT & T's Tariff 12 offerings. Under Tariff 12 AT & T provides each commercial customer with a customized package of integrated telecommunication services at a negotiated price. The package price is less than the sum of the rates that the customer would pay if it purchased each service individually from AT & T, but the customer forfeits the flexibility of determining the precise way in which AT & T will provide the services.

AT & T filed a tariff for each of the four Tariff 12 options, as required by § 203 of the Communications Act. The FCC reviewed the tariffs and the petitioners' objection that they are unlawfully discriminatory within the meaning of § 202(a), which provides that "[i]t shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges ... for ... like communication service." 47 U.S.C. § 202(a). The FCC then held that the Tariff 12 offerings are not unlawfully discriminatory because a package of services is not "like" the individually-tariffed services of which it is composed; wherefore AT & T did not have to show that the difference between the package price and the sum of the piece-part prices is reasonable.

The FCC based that decision primarily upon the fact that a Tariff 12 offering results in cost savings both to the customer and to AT & T. On the other hand, the FCC found that one Tariff 12 package is "like" another and that AT & T therefore has the burden of showing that the price differences among the different packages are reasonable.

On review this court reversed and remanded the matter for the FCC's reconsideration. *See MCI Telecommunications Corp. v. FCC*, 917 F.2d 30 (D.C.Cir.1990). While a negotiated integrated service package is not prohibited by the Communications Act, *see id.* at 38, we held that the FCC erred in basing its § 202 discrimination analysis upon the cost and price characteristics of the integrated service package.

The court determined that "likeness" within the meaning of § 202(a) turns upon "functional equivalence"; "pricing differences *a fortiori* cannot be a basis for finding the services unlike—otherwise, the very discrimination Section 202 attempts to prevent would be the grounds for finding that section inapplicable." *Id.* at 39. Because "[m]uch of the FCC's explanation for its conclusion that integrated services packages are not like the sum of their parts appear[ed] to rest securely upon these forbidden considerations," the court remanded the matter for the FCC to reconsider the likeness issue "without regard for differentials in cost to the carrier and price to the customer." *Id.* at 40.

On remand the Commission invited and received comments from interested parties and again found that a Tariff 12 filing is not "like" its disaggregated service elements. The FCC gave three independent bases for that conclusion. First, the Commission stated that a Tariff 12 offering gives AT & T a degree of provisioning flexibility not available when a customer procures the same services pursuant to their several tariffs. Second, the FCC found that AT & T provides network monitoring functions for its Tariff 12 customers that it does not furnish to customers under individual tariff offerings. Third, the Commission found that the "turnkey" nature of the Tariff 12 offering better enables AT & T to respond to the particular service requirements of the user.

The FCC also reversed its earlier finding that one Tariff 12 offering is "like" another for the purpose of § 202, noting that each offering involves diverse features specially negotiated with the user: "Given the nature of the process and the varying needs and perspectives of each customer, it is inevitable that the negotiations involve numerous variables, the number and combination of which will differ from customer to customer." 6 FCCRcd at 7049. Thus did the Commission conclude that the four Tariff 12 packages comply fully with the Communications Act.

## II. ANALYSIS

■ An inquiry into whether a carrier is discriminating in violation of § 202(a) involves a three-step inquiry: (1) whether the services are "like"; (2) if they are, whether there is a price difference between them; and (3) if there is, whether that difference is reasonable. *See MCI*, 917 F.2d at 39. Because the FCC held that an integrated service package is not "like" its component services purchased individually, it did not reach the next two questions.

■ Likeness, as we said, depends upon "functional equivalence." *See Ad Hoc Telecommunications Users Comm. v. FCC*, 680 F.2d 790, 795 (D.C.Cir.1982) (likeness inquiry "focuses on whether the services in question are different in any material functional aspect"). In applying this test, the FCC must "look to the nature of the services offered" and ascertain whether customers view them as performing the same functions. *MCI*, 917 F.2d at 39. If a user perceives the service "as the same with cost considerations being the sole determining criterion," then the services are "like." *Id.*

In *Ad Hoc* the court reversed the FCC's holding that AT & T's Message Telephone Service was "like" a combination of the carrier's INWATS (800) and OUTWATS services. The court clearly instructed "the Commission [that it] should not blend discrete services in its application of the [functional equivalence] test." 680 F.2d at 796. The petitioners argue at great length that our decision in *Ad Hoc* requires the FCC to break each Tariff 12 package into its component services and, they emphasize, "to ask whether the *commu-*

*nications services* which AT & T provides to its Tariff 12 customers are 'like' the *communications services* which are available from AT & T's separate tariffs."

In relying upon *Ad Hoc* the petitioners assume that a Tariff 12 offering is just a collection of discrete services. AT & T claims, however, and the FCC held, that a Tariff 12 offering is actually a single integrated service that is not "like" a simple amalgam of discrete services. If they are correct, then by virtue of the *Ad Hoc* decision, which bars the FCC from lumping distinct services together, the Commission may not compare the distinct service offered in a Tariff 12 option to some potpourri of AT & T's individually-tariffed services. Thus, the correct application of the *Ad Hoc* decision depends upon how one decides the very issue here under review, *viz.* whether a Tariff 12 offering is a distinct service "unlike" a mere aggregation of other services—to which we now turn.

### A. Is Tariff 12 Like the Sum of the Individual Tariffs?

We repeat the three independent aspects of Tariff 12 that prompted the FCC to find that Tariff 12 is not like the sum of the piece-part tariffs: (1) network monitoring, (2) turnkey service and (3) provisioning flexibility. Although we hold that the first two are inadequate bases for the FCC's decision (as we explain below), we uphold the FCC's finding that Tariff 12 is not "like" the sum of the individual tariffs on the basis of the third rationale alone. *See Carnegie Natural Gas Co. v. Federal Energy Regulatory Comm'n*, 968 F.2d 1291, 1294 (D.C.Cir.1992) ("We will ... sustain an agency decision resting on several independent grounds if any of those grounds validly supports the result, unless there is reason to believe the combined force of these otherwise independent grounds influenced the outcome").

■ The FCC found that the network monitoring function and the "turnkey" nature of the Tariff 12 options each offer a variety of benefits that are not available through the nonintegrated purchase of the component services. *See* 6 FCCRcd at 7044-45, 7045.

Although counsel for the FCC suggested at argument that network monitoring is "not an unmixed benefit," the FCC never specified in its decision (as counsel acknowledged) that either network monitoring or the "turnkey" feature entails any drawback for the customer. The Commission's decision seems to assume that two services are not "like" if there is a material difference between them, even if that difference is an unalloyed advantage associated with the challenged service. That can't be right.

 Recall that § 202(a) of the Communications Act prohibits "any unreasonable discrimination in charges." The FCC has never said that "discrimination in charges" refers exclusively to price discrimination and nothing else; indeed, if "discrimination in charges" does not include non-price features, then the carrier could defeat the broad purpose of the statute by the simple expedient of providing an additional benefit at no additional charge. (The Congress's intention comprehensively to outlaw discrimination is apparent from the terms of the statute, which prohibits unreasonable discrimination not only in "charges" but also in "practices, classifications, regulations, facilities, or services . . . directly or indirectly, by any means or device." 47 U.S.C. § 202(a).) An unreasonable "discrimination in charges," that is, can come in the form of a lower price for an equivalent service or in the form of an enhanced service for an equivalent price. *See Sea–Land Service, Inc. v. ICC,* 738 F.2d 1311, 1317 (D.C.Cir.1984) ("The core concern in the nondiscrimination area has been to maintain equality of pricing for shipments subject to substantially similar costs and competitive conditions"); I ALFRED E. KAHN, THE ECONOMICS OF REGULATION: PRINCIPLES AND INSTITUTIONS 63 (1970) (defining price discrimination as "charging different purchasers prices that differ by varying proportions from the respective marginal costs of serving them").

If, so far as the customer is concerned, the only non-price difference between Tariff 12 and an amalgam of individual services is that under Tariff 12 the carrier provides an additional service—more service for a lower price—then the two are clearly "like" within the intendment of § 202. By providing only a benefit and nary a detriment to the user, the network monitoring function and the "turnkey" feature of Tariff 12 each constitute an in-kind bonus, which is the functional equivalent of a price discount. *See* Douglas H. Ginsburg, *Non–Price Competition,* 38 ANTITRUST BULL. 83 (1993). The FCC therefore erred once again by relying in effect upon "the forbidden consideration" of a "pricing difference" in finding that the network monitoring function and the "turnkey" feature make AT & T's Tariff 12 services "unlike" the services offered under its piece-part tariffs. *MCI,* 917 F.2d at 39.

 The FCC's other reason for finding that Tariff 12 is not "like" the sum of its component service parts is that "Tariff 12 provides AT & T with a level of provisioning flexibility that is not available if the customer orders specific services individually from AT & T's disaggregated tariffs." 6 FCCRcd at 7044. From the analysis above it is apparent that the adequacy of this finding depends upon whether the loss of provisioning control is a material disadvantage to the customer, *i.e.,* a drawback that enters into its calculus of whether to purchase the services it wants separately or under Tariff 12. After all, if the customer does not care how AT & T chooses to provide it with service, then it will decide whether to purchase service under Tariff 12 or under separate tariffs solely upon the basis of price (which makes the services "like" under § 202(a)).

Substantial evidence in the record supports the FCC's finding that "[c]ustomers are aware of the provisioning differences before they select Tariff 12, realize that they are giving up the right to have the service provided in a particular way, and consider this factor material to their procurement decisions." 6 FCCRcd at 7044. Under a combination of individual service tariffs, AT & T is constrained to use the "specific facility type" (input) associated with each service. By contrast, under Tariff 12 a customer generally cannot and does not direct the carrier to provide the services over dedicated facilities or particular media. *See id.* AT & T is obligated only to provide specific services (outputs) and generally retains the flexibility

to do so however it may from time to time choose. According to AT & T, some customers "do not want [Tariff 12], because they do not want to change their control over the management of their service and do not want to suffer disruptions in the provision of their services that would result from conversion to [Tariff 12]." One group of customers reports that they "prefer not to cede the day-to-day ability to reconfigure their networks among piece-part service offerings and even among carriers." Another group of users says that a customer may have a business reason, such as security or service quality, for wanting to avoid satellite or microwave communications paths; this it cannot do, however, if AT & T has control over provisioning.

Confronted with this evidence in the record, the petitioners argue that the FCC "committed reversible error by ... ignoring" the cross-elasticity of the demand for Tariff 12 and for comparable piece-part services; they say that the FCC should have studied customers' actual behavior in the marketplace in order to determine whether they in fact view Tariff 12 as functionally different from the combination of the piece-part tariffs. (Their point is that one can gauge customer perception of functional equivalence best by observing how responsive is the demand for one service to a change in the price of the other.) To be sure, an analysis of demand cross-elasticity would provide a more scientific measure of functional equivalence than does reliance upon what counsel for the Commission admitted at argument may be "self-serving statements by customers" attesting to the materiality that loss of provisioning control has to their purchasing decisions.

In *Ad Hoc* we declined to require the FCC to conduct a study of demand cross-elasticity, leaving "to the Commission, in the first instance, the task of identifying the proper method" for determining customer perception of functional equivalency. 680 F.2d at 796 n. 13. In the event, the FCC chose not to pursue the question of cross-elasticity but to rely upon the numerous and sworn customer statements that AT & T provided. The petitioners produced only their own equally self-serving counter-affidavits, but no

other evidence, to cast doubt upon the reliability of the AT & T customers' sworn statements. In these circumstances, we shall not now second-guess the agency's decision weighing the only type of evidence put before it in this adversary proceeding. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951) (requirement of substantial evidence is not· "intended to negative the function of the [agency] presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect").

### B. Are Tariff 12 Options 1–4 Like Each ·Other?

Reversing its earlier determination, the FCC found that Tariff 12 Options 1–4 are functionally different from each other. According to the FCC, because each Tariff 12 package is the product of extensive negotiations between AT & T and a large commercial customer, and each customer has different needs, the mix of services and features in each option will generally differ from one customer to another. *See* 6 FCCRcd at 7048. The agency's "expectation," *id.* at 7049, that individualized negotiations will usually prevent a finding of likeness seems eminently reasonable to us.

The petitioners object that under this rationale "AT & T can evade Section 202(a) for the benefit of a large business customer by the simple expedient of negotiating an individual service package." It is true that negotiation of an individual service package will usually avoid a likeness finding as between one Tariff 12 package and another; and if the package is made available to any customer who wants it upon the same terms, then there is no unlawful discrimination. *See Sea–Land Service, Inc. v. ICC*, 738 F.2d 1311, 1317 · (D.C.Cir.1984) ("Although one normally regards contract relationships as highly individualized, contract rates can still be accommodated to the principle of nondiscrimination by requiring a carrier offering such rates to make them available to any [customer] willing and able to meet the

contract's terms"). But that is neither surprising nor contrary to the statutory scheme. Section 202(a) is designed to prevent a carrier from granting a discount to one (usually large) user that it would not grant were the same or a "like" service purchased by another (usually small) customer. By its nature, § 202(a) is not concerned with the price differentials between qualitatively different services or service packages. In other words, so far as "unreasonable discrimination" is concerned, an apple does not have to be priced the same as an orange.

The FCC went on to find that "the record in this proceeding confirms [its] expectation" that individually-negotiated Tariff 12 options will not be "like" each other, 6 FCCRcd at 7049, and there is substantial evidence to support the agency's finding that Tariff 12 Options 1–4 are not "like" each other. Each of the options includes a different mix of services. The petitioners insist that these differences are not material, but there are in the record affidavits to the contrary from AT & T's customers. For example, American Express Company indicates that "Option 3 is expressly and carefully tailored for American Express's needs" and adds that "[t]he types and quantities of Service Elements included in the other Options ... simply do not fit [its] needs." There are similar comments of record from customers attesting to the distinctive characteristics of Options 2 and 4. These submissions, credited by the agency, provide substantial evidence for the Commission's finding that Options 1–4 are not "like" each other.

### III. Conclusion

We hold that substantial evidence in the record supports the FCC's conclusion that a Tariff 12 package is not "like" the combination of its component services and that Tariff 12 Options 1–4 are not "like" each other for purposes of § 202(a) of the Communications Act. The petition for review is therefore

*Denied.*