**Richard LEVINE, on behalf of himself and others similarly situated,**
Plaintiff,

v.

**BELLSOUTH CORPORATION,**
Defendant.

No. 03–20274–CIV..

United States District Court,
S.D. Florida.

Jan. 27, 2004.

Kevin Love, Esq., Coral Gables, Scott Bursor, Esq., Nadeem Faruqi, Esq., New York, NY, for Plaintiffs.

William Hamilton, Esq., Sanford Bohrer, Esq., and Scott D. Ponce, Esq., Tampa, for Defendants.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

GOLD, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss (DE # 44, filed October 15, 2003) Plaintiff's Second Amended Complaint (DE # 40, filed September 8, 2003). Plaintiff filed a Response (DE # 47) on November 14, 2003, and Defendant filed its Reply (DE # 50) on December 5, 2003. Oral Argument was held before the Court on Friday, January 9, 2003. The transcript of the proceedings (filed January 27, 2004) is referred to in this Order by the designation "Transcript at" followed by the cited page number.

On August 11, 2003, the Court issued an Order granting Defendant's Motion to Dismiss (DE # 39) the Amended Class Action Complaint (DE # 5, filed March 12, 2003). The Order ("original Order") dismissed all three counts of the Amended Class Action Complaint ("First Amended Complaint"): Count I for violations the Sherman Act, 15 U.S.C. § 1; Count II for violations of the Sherman Act, 15 U.S.C. § 2; and Count III for violations of the Communications Act, 47 U.S.C. § 202(a). The First Amended Complaint was dismissed without prejudice.

On September 8, 2003, Plaintiff filed a Second Amended Complaint, alleging the same three counts on behalf of purchasers of Digital Subscriber Line service from BellSouth based upon violations of federal law for anti-competitive practices. Defendant seeks dismissal of the First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. The Court has jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

Upon careful consideration of the parties' briefs, Plaintiff's allegations in the Second Amended Complaint, and applicable case and statutory law, the Court GRANTS Defendant's Motion to Dismiss with prejudice.[1]

---

1. Plaintiff has already received one chance to amend his complaint to allege standing and state a claim for relief. Although the Elev-

## I. Background

Plaintiff's Second Amended Complaint purportedly brings a class action on behalf of purchasers who bought Digital Subscriber Line ("DSL") service in areas where BellSouth Corporation ("BellSouth") or a BellSouth affiliate is the incumbent local exchange carrier ("ILEC"). Second Amended Complaint ¶ 1. As in the First Amended Complaint, Plaintiff states that BellSouth markets DSL service and local phone service through an illegal tying arrangement whereby customers wishing to purchase BellSouth's DSL service are forced to purchase local phone service from BellSouth. *Id.* Plaintiff alleges that this prevents customers from obtaining lower-priced local phone service from competitors (competitive local exchange carriers or "CLECs") and enables BellSouth to maintain a monopoly on local phone service where it is the ILEC. *Id.*

Plaintiff brings three counts in his Second Amended Complaint: Count I for tying in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; Count II for monopolization of local phone service in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and Count III for violation of Section 202(a) of the Communications Act (or the "1996 Act"), 47 U.S.C. § 202(a). Plaintiff

seeks injunctive and declaratory relief against the allegedly anticompetitive practices, and seeks to recover monetary damages for the difference in price between BellSouth's local phone service and lower-priced alternatives provided by competitors or the price that would obtain in a competitive market.

The Second Amended Complaint makes new allegations regarding (1) "separate standalone loops," (2) the ability to enter into agreements with CLECs, (3) the definition of the market for DSL services, and (4) the differences in services Defendant offers to different consumers. First, Plaintiff states that one way for BellSouth to provide DSL services to subscribers who choose to purchase local telephone service from CLECs, besides entering into a line sharing arrangement with the CLECs, is to provide DSL service over a separate standalone loop. Second Amended Complaint ¶ 13. BellSouth allegedly has this capability because it "almost always" has more than one loop connecting a customer's premises to BellSouth's network, and CLECs "almost always" lease only one of the loops. *Id.* Plaintiff states that BellSouth already provides DSL service on a separate standalone loop to cus-

---

enth Circuit recently changed the rule regarding when a district court should dismiss a complaint with prejudice, this change has not altered the fact that district courts need only give a plaintiff one opportunity to amend a complaint to state a claim. *Cf. Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991) ("[W]here a more carefully crafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."), *overruled by Wagner v. Daewoo Heavy Indus. America Corp.,* 314 F.3d 541, 542 (11th Cir.2002). Accordingly, I am dismissing the Second Amended Complaint with prejudice.

Under the old rule regarding dismissal with prejudice, district courts were required to dis-

miss complaints without prejudice when it appeared that a more carefully drafted complaint might state a claim upon which relief could be granted. *Id.* This rule applied even where the plaintiff never sought leave to amend. *Id.* Under the new rule, however, "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. America Corp.,* 314 F.3d 541, 542 (11th Cir. 2002). Plaintiff is represented by counsel and has not requested leave to amend the Second Amended Complaint. These factors simply add to my decision to dismiss the Second Amended Complaint without prejudice.

tomers of Florida Digital Network, Inc. ("FDN").[2] *Id.* at ¶ 22.

Second, Plaintiff alleges that there is "no *bona fide* issue with regard to BellSouth's ability to obtain access to CLEC-leased loops for purposes of providing DSL service over those loops." *Id.* at ¶ 15. Plaintiff states that he is "not aware of any CLEC denying BellSouth permission to do so" and that several CLECs have petitioned the Federal Communications Commission ("FCC") to compel BellSouth to provide DSL service over CLEC-leased loops. *Id.* Plaintiff states that "MCI and Sprint, as well as other CLECs offering service's in Levine's area, would have agreed to allow BellSouth to continue to provide DSL service to Levine in the event that Levine switched his local phone service" from BellSouth to a CLEC. *Id.* at ¶ 49. Further, Plaintiff states that Bell-South can easily reach interconnection agreements with any CLEC because these agreements are "largely contracts of adhesion drafted by the ILEC." *Id.* at ¶ 16. In the event that there is difficulty reaching an agreement, the Communications Act, 47 U.S.C. §§ 251–252, provides for compulsory arbitration. Second Amended Complaint ¶ 19. Plaintiff also argues that an interconnection agreement specifically addressing line-sharing is unnecessary, and as support, attaches a letter from Jerry Hendrix, Assistant Vice President for Bell-South Interconnection Services, to CLECs. *Id.* at ¶ 18; Plaintiff's Exh. A. The letter states that pursuant to an order issued by the Louisiana Public Service Commission, BellSouth will accept DSL access over loops from CLECs operating in Louisiana via manual processing.[3] Plaintiff's Exh. A. Plaintiff argues that an interconnection agreement specifically addressing line-sharing was unnecessary between Ameritech Michigan, another ILEC, and CLECs. Second Amended Complaint ¶ 20. Ameritech was allegedly able to provide DSL service to CLEC customers "by employing a simple procedure requiring only a single phone call to switch a customer over to a CLEC's local phone service while continuing Ameritech's DSL service." *Id.* at ¶ 20. According to Plaintiff, "Ameritech created a second billing telephone number for the high frequency portion of the loop, and billed the customer's DSL service to that number, while transferring the billing telephone number assigned to the low frequency portion of the loop to the CLEC." *Id.*

Third, Plaintiff makes several new allegations regarding the market for DSL service, which it alleges is defined as the sales of services employing the DSL technology described in the Second Amended Complaint. *Id.* at ¶¶ 23–40. Plaintiff states that cable modem service, satellite-based broadband service, and wireless broadband service are not interchangeable substitutes

---

**2.** This case, however, arose before the Florida Public Service Commission ("FPSC"), under Florida statutes, as a result of a specific agreement between BellSouth and Florida Digital Network, Inc. ("FDN") under which FDN petitioned for arbitration. The FPSC stated in its conclusion, "This is a case of first impression and we caution that this decision should not be construed as an attempt by this Commission to exercise jurisdiction over the regulation of DSL service...." brought by competitors based on specific agreements. Exhibit A of Plaintiff's Opposition to Motion to Dismiss First Amended Complaint.

**3.** During Oral Argument, however, Defendant pointed out that the letter attached to the Second Amended Complaint further states, "If a CLEC does not have the terms and conditions in its BellSouth interconnection agreement, the CLEC should contact its BellSouth contract negotiator to amend its contract." Transcript at 32. Thus, Defendant argued, a specific interconnection agreement with a CLEC *is* necessary before BellSouth can provide DSL service over a CLEC-leased loop. *Id.* at 33.

for DSL service and do not compete directly with DSL service. *Id.* Plaintiff states that the market for local telephone service is defined as the sales of voice telephony services over the wireline local exchange network. *Id.* at ¶ 41.

Fourth, and finally, Plaintiff's new allegations involve violations of § 202(a) of the Communications Act. Plaintiff states that BellSouth offers DSL services to customers under different conditions. *Id.* at ¶ 75. Plaintiff alleges that BellSouth offers DSL service on separate standalone loops to FDN customers and DSL service through line-sharing arrangements with CLECs in Louisiana, but not to Plaintiff and other class members. *Id.* According to Plaintiff, the "differences in terms and conditions under which BellSouth offers DSL service are unreasonable." *Id.* at ¶ 77.

In its Motion to Dismiss, Defendant seeks dismissal of Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) and for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6).

## II. Standard

In its Motion to Dismiss, Defendant seeks dismissal of Plaintiff's Second Amended Complaint pursuant to both 12(b)(1) and 12(b)(6). Under Fed.R.Civ.P. 12(b)(1), the "plaintiff bears the burden of establishing that the court has jurisdiction." *Rosner v. United States*, 231 F.Supp.2d 1202, 1205 (S.D.Fla.2002) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir.1980)) (citation omitted).[4] The Eleventh Circuit has stated that "because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299

(11th Cir.2001) (citations omitted). Where, as Defendant states is the case here, the defendant makes a "facial attack" upon the complaint rather than a factual attack, "the plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Broward Garden Tenants Ass'n v. EPA*, 157 F.Supp.2d 1329, 1336 (S.D.Fla. 2001) (citation omitted).

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir.2001) (citation omitted), *cert. denied*, 535 U.S. 1112, 122 S.Ct. 2328, 153 L.Ed.2d 159 (2002). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir.1998) (citation omitted), *reh'g denied*, 189 F.3d 487 (11th Cir.1999). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F.Supp.2d 1310, 1313 (S.D.Fla.2002). Moreover, when on the

---

4. All Fifth Circuit decisions prior to October 1, 1981 are binding precedent on the Eleventh Circuit. *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Id. (citing Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993)).

### III. Analysis

First, I shall describe the implications of a recent FCC order on this case which Defendant claims requires dismissal. Second, I shall explain why Plaintiff's new claims regarding DSL service over CLEC-leased loops do not cure the First Amended Complaint's standing defects under the Sherman Act. Third, I shall address Plaintiff's failure to state a claim for relief under the Sherman Act. Finally, I shall discuss the insufficiency of Plaintiff's new allegations regarding violations of the Section 202(a) of the Communications Act.

### (A) The FCC Order

Defendant first argues for dismissal based on an order the FCC released on August 21, 2003 (the "FCC order"). Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, *Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers,* CC Docket Nos. 01–338 *et al.,* FCC 03–36 (rel. Aug. 21, 2003), *petitions for review pending, United States Telecom. Ass'n. v. FCC,* Nos. 03–1310, *et al.* (D.C.Cir.) (excerpts attached as Def. Exh. A). In the order, the FCC refused to impose a duty on ILECs to provide DSL services over the same loop as a competing provider. *Id.* Defendant argues that the FCC, applying the standards of the 1996 Act, already rejected the claim that Bell-South should be required to provide DSL service to a CLEC voice service customer, and that BellSouth cannot be subjected to inconsistent standards under the 1996 Act and the Sherman Act. Thus, according to Defendant, the antitrust claim should be dismissed. Motion to Dismiss at 14 (*citing Gordon v. New York Stock Exch.,* 422 U.S. 659, 682, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975); *see also Covad Communications Co. v. BellSouth Corp.,* 299 F.3d 1272 (11th Cir.2002)), *reh'g denied,* 314 F.3d 1282 (11th Cir.2002) (en banc), *and vacated and cert. granted,* —— U.S. ——, 124 S.Ct. 1143, 157 L.Ed.2d 1040 (2004). Plaintiff argues that although Defendant cites several cases finding implied repeal of the antitrust laws in favor of regulation by the Securities and Exchange Commission ("SEC"), it is not aware of any court that has concluded that antitrust immunity was present based on FCC regulatory action. Opposition at 9.

The Eleventh Circuit concluded in *Covad* that the 1996 Act cannot create antitrust immunity. 299 F.3d 1272. In this case, the defendant sought to dismiss an antitrust claim against it. The court first examined whether the 1996 Act's regulation of local telecommunications markets precludes the application of the Sherman Act so that a claim based on facts "inextricably linked" to an alleged violation can never, as a matter of law, form the basis of an independent Sherman Act claim. *Id.* at 1279. Because the court concluded that the answer was no, it then analyzed whether the plaintiff had adequately alleged a violation of the Sherman Act. *Id.* at 1279–1280. In addressing the first issue, the court began with the premise that although courts have determined that if two statutes are deemed to be plainly repugnant to each other, then Congress has implicitly limited one or the other, "courts should be reluctant to imply a limitation resulting in antitrust immunity." *Id.* at 1280 (citation omitted). The court examined the language of the 1996 Act, paying particular attention to its saving clauses:

> SAVINGS CLAUSE ... nothing in this Act or the amendments made by this Act shall be construed to modify, impair,

or supersede the applicability of any of the antitrust laws.

NO IMPLIED EFFECT ... This Act and the amendments made by this Act shall not be construed to modify, impair or supersede Federal, State or local laws unless expressly so provided in such Act or amendments.

*Id.* (*citing* Telecommunications Act of 1996, sec. 601(b)(1), (c)(1), § 152 note, 110 Stat. 56, 143 (1996)). Based on this language, the court concluded that "plain repugnancy" clearly could not be found between the 1996 Act and antitrust laws. *Id.* The court stated, "An act that expressly preserves the antitrust laws' applicability and fully subjects anticompetitive activities to them cannot be read to impliedly repeal those laws." *Id.* at 1280–1281. The court bolstered its conclusion with references to the legislative history indicating Congress' intention that the 1996 Act and the antitrust laws coexist. *Id.* at 1281–1283. In reaching its conclusion, the court disagreed with *Goldwasser v. Ameritech Corp.*, 222 F.3d 390 (7th Cir.2000), cited by BellSouth, to the extent that "it is read to say that a Sherman Act antitrust claim cannot be brought as a matter of law on the basis of an allegation of anticompetitive conduct that happens to be 'intertwined' with obligations established by the 1996 Act." *Covad Communications*, 299 F.3d at 1282.

BellSouth has properly advised that the United States Supreme Court has granted the petition for certiorari in the *Covad* case, vacated the Eleventh Circuit's decision, and remanded the cause to the Eleventh Circuit for further consideration in light of its recent decision in *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, —— U.S. ——, 124 S.Ct. 872, 157 L.Ed.2d 823 (2004) ("Trinko"). *See Covad*, 299 F.3d 1272. Accordingly, the Eleventh Circuit's *Covad* decision lacks precedential value. *Whole Health Chiropractic & Wellness, Inc. v. Humana Med.*

*Plan, Inc.*, 254 F.3d 1317, 1319 n. 3 (11th Cir.2001).

Notwithstanding, the Supreme Court, in *Trinko*, disagreed that regulated entities, such as the Defendant, are shielded from antitrust scrutiny by the doctrine of implied immunity under the 1996 Telecommunications Act. 124 S.Ct. at 878. The Court held that Congress "precluded that interpretation under the antitrust-specific saving clause under Section 601(b)(1) of the Act." *Id.* As noted by the Court, "[T]his bars a finding of implied immunity." *Id.* But the Court also held that "... just as the 1996 Act preserves claims that satisfy existing antitrust standards, it does not create new claims that go beyond existing antitrust standards"; that would be equally inconsistent with the saving clause's mandate that nothing in the Act "modify, impair, or supersede the applicability of the antitrust laws." *Id.* Accordingly, it is necessary first to determine if the Plaintiff has standing to claim a violation of those laws, and, if so, whether the activity of which Plaintiff complains violates preexisting antitrust standards.

**(B) Standing**

I dismissed Plaintiff's First Amended Complaint for lack of constitutional standing. Plaintiff's Second Amended Complaint now attempts to address the deficiencies regarding standing in the First Amended Complaint by adding two sets of allegations. First, Plaintiff alleges that "every CLEC doing business in the nine states in which BellSouth is the ILEC is willing to allow BellSouth to provide DSL service over its leased loop." Thus, Plaintiff claims that there is "no bona fide issue with regard to BellSouth's ability to obtain access to CLEC-leased loops." ¶ 15. Moreover, Plaintiff alleges there is no "bona fide issue with regard to BellSouth's ability to reach an interconnection agreement with any CLEC" because such

"agreements are largely contracts of adhesion drafted by by ... BellSouth, and accepted on a take-it-or-leave-it basis by the CLEC." ¶ 16. The Second Amended Complaint also alleges that the "Communications Act ... provides for compulsory arbitration should there be any difficulty reaching an agreement on the terms of an interconnection agreement." ¶ 19. Second, Plaintiff alleges that "BellSouth could also provide DSL service to CLEC customers over a separate standalone loop, regardless of whether there is an interconnection agreement in place allowing for line-sharing on the CLEC's loop." ¶ 22.

Significant constitutional standing issues remain regarding providing DSL service over CLEC-leased loops. Further, based on the recent *Trinko* decision, I conclude that Plaintiff lacks standing as a person to allege that BellSouth should provide DSL access over CLEC-leased loops. Although the allegations concerning standalone loops may cure the standing defects, these allegations still fail to state a claim for relief under the Sherman Act, *see infra* Part III.(C), and under § 202(a), *see infra* Part III.(D), as I will discuss in the next two sections.

*(1) Constitutional Standing*

The issue of constitutional standing as to Counts I and II of the Second Amended Complaint remains a problem. As in the original Order, it is important to start with what the allegations in the Second Amended Complaint do *not* involve in terms of standing. First, they do not involve a claim by a competitor, or class of competitors, that BellSouth has refused to enter into "interconnection agreements" to permit consumers from having access to the competitor's voice service or Digital Subscriber Line at a cheaper rate. Second, there is no allegation by a competitor, or class of competitors, that BellSouth, having entered into an interconnection agreement, has engaged in anticompetitive be-

havior to stifle competition. Third, there is no allegation by any competitor that BellSouth has refused to provide DSL service to customers who actually have purchased voice service over lines leased by CLECs. Fourth, there are no allegations that BellSouth has engaged in any anticompetitive behavior keeping competitors from being unable to offer DSL service or voice phone service to consumers over BellSouth's leased phone lines. Based on these omissions, and for other reasons, I dismissed Plaintiff's First Amended Complaint for lack of constitutional standing.

■ The essence of Plaintiffs Second Amended Complaint rests on BellSouth's purported failure to offer DSL service to consumers who purchase voice service from CLECs. It is undisputed on the face of the Second Amended Complaint that BellSouth can offer DSL service to customers only (1) over the loop leased by the CLEC or (2) over a separate standalone loop. To the extent Plaintiff attempts to allege an antitrust violation by BellSouth's failure to offer DSL service over a CLEC's leased loop, constitutional standing is lacking for the same reasons set forth in the original Order. As I discussed in that Order, "the causation and redressability requirements for standing are not met because Plaintiff's injury 'is not fairly traceable to BellSouth alone.'" Order at 8. "Plaintiff's arguments are inextricably tied to the consent of unidentified independent parties not before the Court who are under no alleged obligation to accept BellSouth's DSL service, as compared to some other DSL provider." *Id.*

■ Plaintiff has not cured this essential standing deficiency by virtue of his amended allegations with respect to the claim that BellSouth must provide DSL service over CLEC-leased loops. To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) con-

crete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision. *Kelly v. Harris*, 331 F.3d 817, 818 (11th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)).[5] While Plaintiff alleges that "every CLEC doing business in the nine states in which BellSouth is the ILEC is willing to allow BellSouth to provide DSL service over its leased loops [¶ 15]," Plaintiff does not allege, nor can it in good faith allege, that every CLEC would grant such permission on mutually acceptable concrete terms and conditions. The terms and conditions on which BellSouth and any given CLEC might reach agreement are beyond the power of this Court to address, and, in the event of dispute, are subject to compulsory arbitration under the 1996 Act. *See* ¶ 19 of the Second Amended Complaint. The claim that CLECs are "willing to allow" BellSouth to provide DSL service is inherently speculative on its face because it concerns the actions of independent third parties whose behavior is not subject to any order of this Court.[6] The allegation that such "[i]nterconnection agreements are largely contracts of adhesion drafted by the ILEC ... and accepted on a take-it-or-leave-it basis by the CLEC [¶ 16]," is belied by the right to compulsory arbitration under the 1996 Act. BellSouth simply may not compel a CLEC to accept any terms that are not consistent with the 1996 Act requirements.[7] Moreover, the Plain-

**5.** In *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281 (1997), the Supreme Court states that "the irreducible constitutional minimum of standing contains three elements": (1) an injury in fact; (2) causation; and (3) redressability. 520 U.S. at 167, 117 S.Ct. at 1163 (citation omitted). The second factor requires "a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* The third factor requires "that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

**6.** *See* original Order at 6 (*citing ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615, 109 S.Ct. 2037, 2044, 104 L.Ed.2d 696 (1989) ("Whether the [plaintiff's] claims of economic injury would be redressed by a favorable decision ... depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict."); *Florida Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir.1999) (causation requirement not met where allegations of harm deemed "too attenuated"); *Georgia State Conf. of NAACP Branches v. Cox*, 183 F.3d 1259, 1264 (11th Cir.1999) (concluding that causation not established where the injury was "attributable to the conduct and resources of private individuals, not the state"); *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 808 (11th Cir.1993) (where it was "speculative" whether the court could provide relief, the redressability requirement is not met)). Plaintiff's allegations of how third parties would negotiate and what type of terms they would seek in an interconnection agreement are merely speculative claims involving third parties, and thus do not sufficiently allege causation and redressability.

**7.** I concur with FPL's observation that the terms of such a bargain could well affect whether the alleged conduct would cause Plaintiff injury. Plaintiff alleges only that BellSouth's customers "could save a few dollars on their local phone service by switching to a CLEC." Complaint, ¶ 46. In the event the terms of dealings between BellSouth and the CLEC resulted in even minor costs to the provision of DSL service, Plaintiff's claim to injury would fail. At this juncture, I have to speculate not only that there would be an agreement on terms, but that such agreement would not result in increase costs to Plaintiff and the class of customers such as to preserve the injury claim.

tiff's argument that any such arrangements that BellSouth or other incumbent LECs have made would have to comply with state-commission-imposed regulatory obligations, pending judicial challenge, negates, rather than supports, Plaintiff's claim to standing. The claim that state commission procedures are available to work out the terms of dealing between CLECs and ILECs emphasizes that the current lawsuit has been brought by the wrong party in the wrong forum.

In sum, the causation and redressability requirements for constitutional standing are not met because Plaintiff's injury is not fairly traceable to BellSouth alone. Plaintiff's additional line-sharing allegations fail to address with problems with causation and redressability in the First Amended Complaint.

### (2) Trinko: Standing as a "Person"

Based on *Trinko*, I conclude that Plaintiff lacks standing as a person to allege that the Sherman Act requires Defendant to provide DSL service over CLEC-leased loops. During Oral Argument, Plaintiff principally relied on the Second Circuit's decision in *Law Offices of Curtis V. Trinko, LLP v. Bell Atlantic Corp.*, 305 F.3d 89 (2nd Cir.2002), *rev'd* —— U.S. ——, 124 S.Ct. 872, 157 L.Ed.2d 823 (2004), in support of his standing argument. In that case, the Plaintiff, a local telephone service customer of AT & T, claimed that it was damaged when the defendant, Bell Atlantic, denied customers of AT & T, the plaintiff's local phone service provider, equal

access to its local network. *Id.* It filed a class action pursuant to the Clayton Act, alleging that Bell Atlantic violated § 2 of the Sherman Act. *Id.* It sought treble damages, a remedy that § 4 of the Clayton Act makes available to "any person who has been injured in his business or property." *Id.* In Justice Stevens' concurring opinion in *Trinko*, he addressed the threshold question of whether the plaintiff Law Offices was a "person" within the meaning of § 4. 124 S.Ct. at 882. Justice Stevens concluded that the Law Offices lacked standing, and that he would not decide the merits of the § 2 claim unless and until such a claim is advanced by either AT & T or a similarly situated competitive local exchange carrier. *Id.* at 882.[8]

 Similar to the plaintiff in *Trinko*, Plaintiff, a local telephone customer of BellSouth, requests treble damages under the Clayton Act, 15 U.S.C. § 15(a). *See* Second Amended Complaint ¶ 22. In my view, Justice Steven's reasoning applies, and it is necessary to determine not only constitutional standing, but whether Plaintiff has standing as a "person" under the Clayton Act. To the extent the Second Amended Complaint continues to allege Plaintiff's inability to receive DSL service from BellSouth over a loop that has been leased to a CLEC, I conclude that Plaintiff is not a "person" because of there is only an indirect relationship between the Defendant's alleged misconduct and the Plaintiff's asserted injury. The missing CLECs, as the more direct victim of Bell-

---

**8.** In the Second Circuit's *Trinko* decision, the court upheld the district court's conclusion that the plaintiff had antitrust standing and rejected the defendant's argument that the plaintiff was essentially an indirect purchaser who cannot recover antitrust damages under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), which held that a customer of a customer who is overcharged by a monopolist does not have antitrust standing. 305 F.3d at 105–107.

The rationale for the *Illinois Brick* rule is that it is difficult to calculate the damages suffered by an indirect purchaser. *See* 431 U.S. at 737, 97 S.Ct. at 2070. The indirect purchaser is only damaged to the extent that the direct purchaser passes on to it the overcharge resulting from the anticompetitive conduct. Any such calculation would be imprecise and could result in double recovery if both the direct and indirect purchasers sue and the calculations in their suits differed.

South's alleged misconduct, would be in a far better position than Plaintiff, as a local telephone service customer, to vindicate the public interest in the enforcement of the antitrust laws. *See Trinko* at 882.

## (C) Plaintiff's Second Amended Complaint Has Failed to State a Claim under the Sherman Act.

In the original Order, I concluded that Plaintiff had failed to state a claim under the Sherman Act. The Second Amended Complaint attempts to cure this problem by adding allegations regarding standalone loops, CLEC-leased loops, and the DSL service market. As I will explain below, for the reasons set forth in the original Order, the new standalone loop allegations fail to state a claim under the Sherman Act, and the new CLEC-leased loop allegations fail to state a claim under § 1 of the Sherman Act. Although the allegations regarding the DSL service market may cure some of the 12(b)(6) defects regarding Count II, based on the *Trinko* decision, I conclude that Plaintiff has not sufficiently alleged a violation of § 2 of the Sherman Act, as I will explain below.

*(1) The new allegations regarding standalone loops fail to state a claim under the Sherman Act.*

In the original Order, I addressed Plaintiff's statement during Oral Argument that Defendant can provide DSL service over a separate standalone loop. Original Order at 13. I stated, "[T]he critical point is that Plaintiff's allegations do not include sufficient factual allegations supporting Plaintiff's theoretic argument that Defendant possesses that capability." *Id.* Plaintiff's Second Amended Complaint does not remedy this problem.

■ Plaintiff alleges that BellSouth could provide DSL service to CLEC customers over a standalone loop, regardless of whether there is an interconnection agreement in place allowing for line-shar-

ing on the CLECs loop, as it does for FDN customers. Second Amended Complaint at ¶¶ 13, 22, 49. DSL for FDN consumers, however, resulted from a specific agreement between BellSouth and FDN and a petition for arbitration in which the FDN actually requested the FCC to prohibit BellSouth from requiring its phone lines for its DSL service. *See* Exh. A to Opposition to Motion to Dismiss First Amended Complaint, incorporated by reference in Opposition at 1. Plaintiff has not specifically stated that BellSouth would be able to provide DSL service in this manner to customers who receive voice service from other CLECs. Further, the Second Amended Complaint is devoid of any allegations that BellSouth has a right of access to these standalone loops. There are no allegations regarding who has control of these loops that "almost always" (Second Amended Complaint ¶ 13) exist, and thus, the Court cannot draw any inferences that BellSouth would indeed have a right to use them to provide DSL services. The allegation that BellSouth "almost always" has more than one loop connecting a customer's premises to its network and that CLECs "almost always" lease only one of the loops (*Id.* at ¶ 13) does not sufficiently allege that BellSouth has the right to provide DSL service over a separate standalone loop without the consent of third parties not involved in this action.

*(2) The new allegations regarding CLEC-leased loops fail to state a claim under Section 1 of the Sherman Act.*

In my prior Order, I concluded that "Plaintiff's allegations are insufficient to plead a tying claim because they do not sufficiently support the contention that BellSouth has the right to offer DSL service when a different carrier is providing the tied product over the same line." Order at 13. Indeed, "Plaintiff [has] con-

ceded that BellSouth cannot provide DSL service over a line that has been leased by a CLEC without an agreement with the CLEC." *Id.* at 8. To the extent Plaintiff continues to claim that BellSouth should have offered DSL service over a line that a CLEC has leased, he continues to fail to state a tying claim. There is simply no tying case where a defendant has been held liable for failing to obtain the permission of a third party to offer the supposed tying product separately.

*(3) Plaintiff fails to state a claim under Section 2 of the Sherman Act.*

Plaintiff makes a number of allegations regarding the market for DSL service, which it defines as the sale of services employing the DSL technology. Second Amended Complaint ¶¶ 23–40. Defendant acknowledges that these allegations "may meet the legal standard for pleading that DSL service constitutes a distinct product market." Motion to Dismiss at 10. Plaintiff, however, has failed to plead that Bell-South has an unlawful monopoly in this market and has thus failed to state a claim under § 2 of the Sherman Act.

■ The thrust of Plaintiff's § 2 claim is that BellSouth has achieved or maintained monopoly power by exclusionary practices, including its practice of refusing to make DSL service available to consumers who choose to purchase local phone service from CLECs. § 71. Generally, a plaintiff can establish that a defendant violates § 2 of the Sherman Act by proving two elements: (1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident. *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Applying these principles, the district judge in *Covad,* relying on the Seventh Circuit's opinion in *Gold-wasser v. Ameritech Corp.,* 222 F.3d 390 (7th Cir.2000), dismissed the Covad Sherman Act claims, holding that allegations that are based on duties established by the 1996 Act cannot form the basis of a violation of the Sherman Act because (1) " 'affirmative duties to help one's competitors ... do not exist under the unadorned antitrust laws" (quoting *Goldwasser,* 222 F.3d at 400); (2) "the 'elaborate enforcement structure' of the 1966 Act precludes suits under the Sherman Act for ILEC duties because 'antitrust laws would add nothing to the oversight already available under the 19996 laws,' " (quoting *Goldwasser,* 222 F.3d at 400–01); and (3) even if such allegations could be entirely divorced from the 1996 Act context, such claims nonetheless would not constitute "allegations of a free standing antitrust claim" because "[t]he elaborate system of negotiated agreements and enforcement established by the 1996 Act' " should not be "brushed aside by any unsatisfied party with the simple act of filing an antitrust action' " *(quoting Goldwasser,* 222 F.3d at 401). *See Covad,* 299 F.3d at 1278 *(quoting from* the district judge's order).

In its opinion reversing the district judge, the Eleventh Circuit concluded that Covad's Sherman Act claims fall under three different categories of alleged anti-competitive behavior, namely, denial of an essential facility, refusal to deal, and illegal manipulation of BellSouth's dual role as both Covad's wholesale supplier (of local exchange elements) and its retail competitor (for DSL) by engaging in a "price squeeze." *Id.* at 1984. Given that the Eleventh Circuit's Covad opinion is no longer binding precedent, the question arises as to whether, under the Supreme Court's *Trinko* decision, Plaintiff's antitrust claims fail to state a Sherman Act § 2 claim.

■ In Plaintiff's Notice of Filing of Supplemental Authority (DE # 58, filed January 20, 2004) Plaintiff argues that the Supreme Court merely held that a complaint that alleges only violations of an incumbent LEC's regulatory obligations created by 47 U.S.C. § 251(c) does not state a claim under § 2 of the Sherman Act. Plaintiff argues that "[T]his aspect of the *Trinko* ruling has no application to this case because Plaintiff's allegations ... do not concern violations of any regulatory obligations; rather, the claims are based on longstanding antitrust doctrines concerning tying and refusals to deal, which are completely independent of the 1966 Telecommunications Act." BellSouth, however, in its Notice of Supplemental Authority (DE# 59, filed January 20, 2004) suggests otherwise. I concur with BellSouth. It seems odd indeed that a plaintiff consumer would be able to state a Sherman Act claim for failure to provide DSL on a standalone basis under the *Trinko* analysis while a CLEC with an interconnection agreement with BellSouth cannot.[9] This particularly is the case where the FCC, in its *Triennial Review Order*, has already examined possible competitive benefits from requiring ILECs to provide their DSL service to CLEC customers, and it has determined not only that such a regulatory requirement would bring no benefit, but also that it would discourage investment and innovation and thus harm consumers. Evidently, no one has even challenged that determination on review. *See* Defendant's Notice of Supplemental Authority at 4. Because the FCC has already

actively examined and affirmatively rejected the claimed *competitive* benefits of imposing, as a regulatory duty, the obligation that Plaintiff seeks to impose under the antitrust laws, no further antitrust scrutiny is warranted—the regulatory structure "was an effective steward of the antitrust function." *Trinko,* 124 S.Ct. at 880.

Further, in *Trinko,* the Court noted that a refusal to cooperate with rivals constitutes a violation of § 2 only in limited circumstances. 124 S.Ct. at 881. In distinguishing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 601, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985), the *Trinko* Court emphasized two factors that were present in *Aspen Skiing:* (1) the defendant's unilateral termination of a voluntary (and thus presumably profitable) course of dealing with its competitor and (2) the defendant's refusal to provide to the competitor its product for the retail price. *Id.* at 881. Neither factor is present in this case. First, Defendant has not terminated prior agreements with CLECs allowing BellSouth DSL service over CLEC lines; thus, there is no presumption that this arrangement would be profitable, and there is no prior conduct that sheds light upon Defendant's motivation in not providing DSL service over CLEC-leased lines. Second, just as in *Trinko,* Plaintiff is demanding a product BellSouth has never offered at all—DSL service on a standalone basis—and, accordingly, a product for which BellSouth has never set a retail price. 124 S.Ct. at 882 (contrasting the *Aspen Skiing* defendant's refusal to pro-

---

**9.** In *Trinko,* there were allegations of a refusal to cooperate with rivals, which can, under certain circumstances constitute anticompetitive conduct and violate § 2. Even given those circumstances, the Supreme Court concluded that "... Verizon's alleged insufficient assistance in the provision of service to rivals is not a recognized antitrust claim under this Court's existing refusal-to-deal precedents."

124 S.Ct. at 882. The Supreme Court rejected the argument that the 1996 Act's extensive provision for access supports antitrust liability. As stated by the Court, "We think the opposite. The 1996 Act's extensive provision for access makes it unnecessary to impose a judicial doctrine of forced access." *Id.* at 880.

vide to its competitor a product that it already sold at retail with "services allegedly withheld [that] are not otherwise marketed or available to the public."). Plaintiff cannot argue that Defendant "turned down a proposal to sell at its own retail price, suggesting a calculation that its future monopoly retail price would be higher" (*Trinko*, at 874).

In my view, the refusal to deal with consumers for DSL service as alleged in the Second Amended Complaint does not fit within the limited exception recognized in *Aspen Skiing* as narrowly construed in *Trinko*. Accordingly, Count II should be dismissed for a failure to state a claim under § 2 of the Sherman Act.

**(D) Plaintiff's Communications Act claim under Count III should be dismissed on the merits.**

Finally, Plaintiff's Second Amended Complaint fails to state a claim under Section 202(a) of the Communications Act, 47 U.S.C. § 202(a). Plaintiff alleges that BellSouth violated this law by denying BellSouth DSL customers access to local phone service offered by CLECs. Second Amended Complaint ¶¶ 75–79. Plaintiff alleges that BellSouth's alleged actions constitute unjust and unreasonable discrimination in the provision of such facilities in violation of the Communications Act. *Id.* Plaintiff's new allegations are as follows: (1) BellSouth offers DSL service on separate standalone loops to FDN customers and DSL service through line-sharing agreements with CLECs in Louisiana, but not to Plaintiff and other class members and (2) the "differences in terms and conditions under which BellSouth offers DSL service are unreasonable." *Id.* BellSouth argues that providing DSL services to FDN and Lousiana CLEC customers is not unreasonable because it has been ordered to provide these services by a state regulatory agency. Motion to Dismiss at 24 (*citing* Plaintiff's Opposition to Motion to Dismiss First Amended Complaint at 1, 2, 18, 19).

To make a discrimination allegation under Section 202(a), Plaintiff must allege that "(i) the services are 'like'; (ii) if so, the carrier is offering the service to other customers at a different price or under different conditions than those offered to [the plaintiff]; and (iii) if such difference exists, it is unreasonable." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 199 (2d Cir.2001) (internal quotation marks and citation omitted); *Competitive Telecomms. Ass'n v. FCC*, 998 F.2d 1058, 1061 (D.C.Cir.1993) (same). Upon review of Plaintiff's allegations, I conclude that Plaintiff has not sufficiently alleged the third element of a claim under Section 202(a) of the Communications Act. It is not unreasonable to treat FDN and Louisiana-based customers differently from other customers when a state regulatory agency orders it, and despite Plaintiff's suggestion to the contrary (Opposition at 18) the Court need not accept as true Plaintiff's legal conclusion that the differences are unreasonable. *See Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("[A complaint's] unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."). Thus, Plaintiff's new allegations in Count III are still insufficient to state a claim under the 1996 Act.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED:**

1. Defendant's Motion to Dismiss (DE # 44) is GRANTED. Plaintiff's Second Amended Complaint is DISMISSED WITH PREJUDICE.

2. This case is CLOSED. All pending motions are DENIED AS MOOT.